HANDLEY et al. v. PALMER et al.

(Circuit Court, W. D. Pennsylvania. January 12, 1899.)

No. 1, September Term, 1896.

1. WILLS—VALIDITY—CONFLICT OF LAWS.
    The validity of a residuary clause in the will of one domiciled in Pennsylvania, whereby he made a bequest to a city of Virginia for the purpose of establishing schools for the poor, is to be determined by the law of Pennsylvania, in respect, at least, to all real and personal estate situated in the state.

2. SAME—DIRECTION TO SELL REAL ESTATE—CONVERSION.

A mandatory direction by the testator, requiring his executors to sell all his real estate, wherever situate, at the end of 20 years, works an equitable conversion, under the Pennsylvania law, of all his lands, wherever they may be, into personalty.

3. MUNICIPAL CORPORATIONS—ACQUISITION OF PROPERTY BY WILL.

In Pennsylvania, municipal corporations are capable of taking and holding property under a will, and acting as trustee, for purposes of a public nature germane to the objects of the corporation.

4. WILLS—CHARITABLE BEQUESTS—INCAPACITY OF TRUSTEE.

If, for any reason, a municipal corporation, to which a charitable bequest for educational purposes has been made in trust, is incapable of acting as trustee, the bequest will not be allowed to fail, under the law of Pennsylvania, but the court will supply a trustee.

5. SAME—VALIDITY—UNCERTAINTY OF BENEFICIARIES.

A bequest to a city directing that the income of the fund shall be expended "in said city by the erection of school houses for the education of the poor," is not void, under the Pennsylvania law, because of the indefiniteness of beneficiaries.

6. SAME—UNCERTAINTY OF SUBJECT-MATTER.

A will, in one of its items, bequeathed the following sums of money to each of the persons named in Schedule A, "which schedule is hereby made a part of my will, the same as if the name of each person was named herein." The testator left a separate paper, marked "Schedule A," which was filed, and admitted to probate, with his will. The paper, however, contained nothing but a heading, the names and amounts being left blank. The will was in all other respects complete and perfect. *Held*, that this paper was to be entirely disregarded, and did not affect the validity of the will in other respects.

7. SAME—VIRGINIA LAW.

Under the Virginia statutes of April 2, 1839, and March 10, 1841, gifts, devises, etc., for educational purposes were excepted from the general rule in that state under which the courts have no authority to sustain charities where the objects are indefinite and uncertain.

8. SAME—SPECIAL ACT CONFERRING CAPACITY.

The special act of the general assembly of Virginia of February 7, 1896, authorizing the city of Winchester to accept the bequests under the will of John Handley, and providing for the administration thereof, gave to the city, if it were otherwise wanting, capacity to take under the will, the bequest being valid in all other respects.

This was a suit in equity by Henry Handley and others, heirs at law of John Handley, deceased, against Henry W. Palmer and others, seeking to have adjudged invalid the residuary clause in the will of the said John Handley.

Jessup & Jessup and Geo. H. Starr, for complainants.

H. W. Palmer and R. M. Ward, for defendants.

ACHESON, Circuit Judge. John Handley, late a citizen of the state of Pennsylvania, and a resident of the city of Scranton, in that state, died at that city on February 15, 1895, without leaving to survive him a wife or any descendants, or any relatives nearer than first cousins. He left a large estate, both personal and real. A great part of his real estate was situated in the city of Scranton, and elsewhere in the state of Pennsylvania. A portion, consisting of about 15,000 acres of timber and coal land, was situated in the county of McDowell, in the state of West Virginia; and another

.portion, consisting of about 1,200 acres of land, was situated in Frederick county, in the state of Virginia. He left a will dated December 29, 1890, with a codicil attached thereto dated July 31, 1893, which were duly probated since his death. By his will he disposed of his entire estate. He ordered and directed his executors to sell and convey all his real estate at the end of 20 years. He made certain specific bequests, and disposed of the entire residue of his estate in manner following:

"Item. All the rest and residue of my estate I give, devise, and bequeath to the city of Winchester, Virginia, to be accumulated by said city for the period of twenty years; the income arising from said residue estate to be expended and laid out in said city by the erection of school houses for the education of the poor."

The plaintiffs in this bill are first cousins of John Handley. They sue as heirs at law of the decedent and next of kin to him. The defendants are the executors of and trustees under the will of John Handley. The specific bequests under the will are not here drawn in question, but the plaintiffs claim that John Handley died intestate as to all the rest of his estate, and they seek a decree adjudging that the residuary clause of his will above quoted is invalid, and wholly void. The plaintiffs contend that the residuary clause is invalid, because the city of Winchester, a municipal corporation of the state of Virginia, has not the legal capacity to take the estate intended to be given thereby, or to take and administer the same upon the trust therein set forth, and because the beneficiaries and the objects and purposes of the trust are uncertain, and because the subject-matter of the residuary bequest is also uncertain.

It is clear that, as respects all the testator's personal estate and his real estate situated in the state of Pennsylvania, the validity of the residuary clause is to be determined by the law of Pennsylvania; the testator's domicile having been there at the date of his will and at the time of his death. Desesbats v. Berquier, 1 Bin. 336; Freeman's Appeal, 68 Pa. St. 151; Magill v. Brown, 16 Fed. Cas. 408; Brightly, N. P. 346; Jones v. Habersham, 107 U. S. 174, 179, 2 Sup. Ct. 336. In Magill v. Brown, supra,—a case relating to bequests to charitable uses under the will of Sarah Zane,—Mr. Justice Baldwin, sitting at circuit in this state, held that, the domicile of the testatrix being here, the law of this state governed her disposition of her personal property as well as of her real estate situated here; and (curiously enough) sustained a bequest "to the citizens of Winchester," Va., to purchase a fire engine and hose, and a bequest "to the select members belonging to the Monthly Meeting of Women Friends held at Hopewell, Frederick county, Virginia," the interest to be applied "towards the relief of the poor belonging thereto." In Jones v. Habersham, supra, which involved charitable devises and bequests, the supreme court of the United States said that the validity of the devises, "as against the heirs at law, depends upon the law of the state in which the lands lie, and the validity of the bequests, as against the next of kin, upon the law of the state in which the testratrix had her domicile." It is to be observed that under the will of John Handley no real estate anywhere is devised

to the city of Winchester. By the express direction and order of the testator contained in his will his entire real estate, wherever lying, is to be sold by his executors. This direction, by the settled law of Pennsylvania, worked a conversion of the testator's real estate, wherever situated, into personalty, as of the date of his death. Dundas' Appeal, 64 Pa. St. 325; Roland v. Miller, 100 Pa. St. 47; Miller v. Com., 111 Pa. St. 321, 2 Atl. 492; Williamson's Estate, 153 Pa. St. 508, 26 Atl. 246. The plaintiffs' counsel, as I understand them, concede that the power of sale given to the executors is mandatory, and worked an equitable conversion of the testator's real estate everywhere, if the residuary clause is valid. In their brief they say:

"The property which is subject to the residuary clause or gift [item' 28 of will] is to be regarded as personal property, in order to determine the validity of the residuary bequest. * * * If the bequest be held valid, the fund is to be decreed personal property, and passes to the city of Winchester as such. If invalid or void, then, the purpose of the conversion having failed, the conversion of the real estate does not take effect, and the real estate retains its original character for the benefit of the heirs."

The plaintiffs' counsel further contend that "the question of the validity of the residuary legacy is to be determined mainly by the laws of Virginia."

The further investigation of the case involves, in the first place, an inquiry into the law of the state of Pennsylvania as it bears upon the question of the validity of the residuary clause of the will of John Handley. Now, it is the settled law of Pennsylvania, as it is generally the law elsewhere (2 Dill. Mun. Corp. [2d Ed.] § 437), that a municipal corporation is capable of taking property, and acting as a trustee for purposes of a public nature germane to the objects of the corporation. City of Philadelphia v. Fox, 64 Pa. St. 169. Thus, in Mayor, etc., v. Elliott, 3 Rawle, 170, a bequest to the city of Philadelphia in trust to purchase a lot of ground, and erect thereon a hospital for the relief of the indigent blind and lame, and to manage and regulate the institution, was sustained; as was a bequest to a city to expend the income in planting shade trees, in Cresson's Appeal, 30 Pa. St. 437. The capacity of a municipal corporation to administer a trust for educational purposes under a devise was sustained by the supreme court of the United States in the leading case of Vidal v. Girard's Ex'rs, 2 How. 127. Judged by the law of Pennsylvania, then, the objection to the competency of the city of Winchester to take the bequest or execute the trust under the residuary clause of this will is without force. If, however, for any reason, the city of Winchester were incompetent to execute the trust, the law of the testator's domicile would not suffer his charitable intentions to be thereby defeated, but would supply a trustee. Both by the common law and the statute law of Pennsylvania a charitable gift is not to fail because given to a person or corporation incapable of taking it and administering the trust, but a competent trustee for the purpose will be appointed by the court. Frazier v. Church, 147 Pa. St. 256, 23 Atl. 442; Act April 26, 1855 (P. L. p. 331); Purd. Dig. p. 298.

Under the adjudications in Pennsylvania, is the objection based on the alleged uncertainty of the beneficiaries and of the purposes and objects of this residuary bequest well founded?. I think not. Charitable gifts, such as this residuary bequest to the city of Winchester, have always been highly favored here, although the statute of 43 Eliz. c. 4, concerning charitable uses, was never adopted by the colony or state of Pennsylvania. In Witman v. Lex, 17 Serg. & R. 88, 93, the supreme court of the state, speaking by Gibson, C. J., with reference to charitable bequests, declared: "For the present it is sufficient to say that it is immaterial whether the person to take be in esse or not, or whether the legatee were, at the time of the bequest, a corporation capable of taking or not, or how uncertain the objects may be, provided there be a discretionary power vested anywhere over the application of the testator's bounty to those objects; or whether their corporate designation has been mistaken. If the intention sufficiently appears on the bequest, it would be held valid." Accordingly, the court there sustained a bequest to a church to be laid out in bread, annually for 10 years, for the poor of the congregation, and also a bequest of money to trustees, the interest to be applied to the education of young students in the ministry of the congregation, under the direction of the vestry. In Pickering v. Shotwell, 10 Pa. St. 23, a devise of real and personal estate to the "Monthly Meeting of Friends of Philadelphia for the Northern District" (being an unincorporated religious association), to be applied as a fund for the distribution of good books, among poor people in the back part of Pennsylvania, or to the support of an institution or free school in or near Philadelphia, was established against the heirs and representatives of the testator on a bill by members of the meeting. In Domestic & Foreign Missionary Society's Appeal, 30 Pa. St. 425, 435, this general rule was laid down: "In the case of a will making a charitable bequest, it is immaterial how vague, indefinite, and uncertain the objects of the testator's bounty may be, provided there is a discretionary power vested in some one over its application to those objects." There the principle was applied in favor of a corporation of a sister state. In Magill v. Brown, supra, Mr. Justice Baldwin sustained a bequest upon a trust to be administered in the state of Virginia, which was no more definite and certain than is the trust under the residuary bequest here. In Lawrence Co. v. Leonard, 83 Pa. St. 206, 211, the fund bequeathed was to be put at interest for 10 years, "the interest, yearly, of it to be applied to the support of the poor of North Beaver township." The bequest was adjudged to be good, the court saying: "The county being competent to take the fund as a trustee of the testator's own appointment, the vagueness of the trust or the uncertainty of the subjects of the charity is not material." In City of Philadelphia v. Fox, 64 Pa. St. 169, 182, the court, speaking generally of a trust for charity, said, "Indefiniteness is of its essence." And the court there, in mentioning objects within the general scope and purposes of a municipality, included "the building of school houses." In Trim's Estate, 168 Pa. St. 395, 31 Atl. 1071, a devise of land "to go to the benefit of the poor of Eldred township, Warren county, Pa., to have the use, and nothing more, *  *  *

for their benefit and use, * * * to be managed by the overseers of the poor in said county for the benefit of Eldred township," was sustained as a good charitable use, although the trustees were not designated by their corporate name.

In view of these authorities (and many more might be cited), it is not to be doubted that under the law of the testator's domicile the residuary clause of his will is unimpeachable. We have here a competent trustee of the testator's own appointment, invested impliedly with all necessary discretionary power for the application of the testator's bounty; an object—"the erection of school houses"—within the legitimate purposes of a municipality; and a highly meritorious charity,—one in the sense of the common law,—"the education of the poor." I see nothing uncertain here. The testator's meaning is sufficiently plain. The objection that the locality of the poor entitled to this bounty is left undefined is without substance. The poor of the city of Winchester are certainly within the terms of the bequest, and that is enough. No construction should be given to the clause which would tend to defeat it. Nor is it for the testator's heirs or next of kin to object to his benevolent plan for supposed incompleteness; for instance, in not expressly authorizing the purchase of ground upon which to erect the contemplated school houses. Even if the scheme were impracticable, these plaintiffs have no standing to impeach it for that cause.

The allegation that the subject-matter of the residuary clause is uncertain rests on the ninth paragraph in the will, namely:

"Item. I also give and bequeath the following sums of money to each of the persons named in Schedule A, which schedule is hereby made a part of this, my will, the same as if the name of each person was named herein. And I direct my executors to pay the said several bequests to each person, if living, at the time of my demise, or when such bequest shall fall due, within two years from the date of my death."

The testator left a separate paper, marked "Schedule A," which was filed with his will and codicil in the office of the register of wills, and admitted to probate therewith. This paper, however, shows nothing but a heading. It contains no names or amounts. It is a blank. Whatever intention the testator once entertained in respect to bequests to be inserted in the schedule he did not carry out. Presumably he abandoned his purpose. His will, dated December 29, 1890, is a perfect instrument, legally executed. This is also true of the attached codicil, dated July 31, 1893, which made a change as to one of the executors, but otherwise expressly confirmed the will. Plainly, no effect whatever is to be given to this unfilled and unsigned separate sheet of paper designated "Schedule A."

Enough has been said to end the case if the absolute direction given by the testator to his executors to sell all his real estate worked a conversion of it, wherever situated, into personalty for every purpose. While this seems to be so, yet it is deemed best to consider the question of the validity of the residuary bequest to the city of Winchester with reference to the laws of Virginia. This case, I think, is not governed by the decision in Gallego v. Attorney General, 3 Leigh, 450, and those which have followed it, that the

statute 43 Eliz. relating to charitable uses, if it was ever in force in Virginia, was repealed by the act of 1792, and that courts of chancery have no jurisdiction at common law to decree charities, where the objects are indefinite and uncertain. The bequest here in question is for educational purposes, and such bequests were taken out of the operation of the doctrine of Gallego v. Attorney General by the act of April 2, 1839, and the act of March 10, 1841, the enabling provisions of which acts, amended and enlarged, have been embodied in the later codes of the state of Virginia. Kelly v. Love's Adm'rs, 20 Grat. 124, 131; Kinnaird v. Miller's Ex'rs, 25 Grat. 107; Roy's Ex'rs v. Rowzie, Id. 599, 610. In Kelly v. Love's Adm'rs, supra, the supreme court of appeals of Virginia, speaking by Staples, J., with reference to the act of 1839, said:

"I think the object of the legislature in passing the act was to change the rule of law laid down in the cases before cited controlling bequests and devises for the establishment of schools and colleges, leaving it in full effect and operation so far as it applied to bequests and devises for religious purposes." And again: "The effect of the act was simply to take from the heirs the right to object to the validity of such devises and bequests. It made them valid, so far as the heirs were concerned, but reserved to the state the right to determine, through its legislature, acting upon the facts of each case, as reported by the courts. whether the devise should be carried into effect or not."

In Roy's Ex'rs v. Rowzie, supra, the supreme court of appeals, speaking of the act of 1839, said:

"We think its only purpose was to make valid a certain class of indefinite charities, to wit, charities for literary purposes, but to except from that class thus made valid an indefinite charity to a theological seminary." Again, the court there said: "The purpose of the acts of 1839 and 1841 was to make valid a certain class of donations which had never been valid before, but to make an exception in that case only of a theological seminary. They were enabling acts, which were not to extend to a theological seminary."

In none of the later decisions of the supreme court of appeals of Virginia do I find anything opposed to the view expressed in the two cases from which I have just quoted, that the effect of the enabling legislation of the state in favor of gifts, devises, etc., for purposes of education, was to sustain indefinite charities for educational purposes.

The statute law of Virginia governing this general subject in force at the time of John Handley's death is to be found in chapter 65 of the Code of 1887 (sections 1420, 1421, 1423). These sections validate gifts, devises, and bequests for purposes of education, and provide for the holding thereof, and the enforcement of trusts relating thereto. It is needless to quote these sections at length. I content myself with saying that, in my judgment, under the statute law of Virginia in force at the date of the death of this testator, and under the decisions of the highest court of that state, his residuary bequest to the city of Winchester is valid. Furthermore, under the charter of the city of Winchester, the act of April 2, 1874, and by the general laws of the state of Virginia at the date of the testator's death, the city was empowered and required to establish and maintain public free schools, and to levy taxes for their support. This bequest, then, directly subserves a corporate purpose, and the administration of

the trust is within the scope of the general powers of the corporation. I do not see how, upon general principles, the plaintiffs can gainsay the disposition which the testator has seen fit to make of his residuary estate. He has given it to the city of Winchester, and prescribed a special use, which is certainly germane to the general purposes of the municipality.

This discussion ought not to end without some reference to the special act of the general assembly of Virginia of February 7, 1896, authorizing the city of Winchester to accept the bequests (specific and residuary) under the will of John Handley, validating them, and providing for the administration thereof. Now, it may be that this act would have been inoperative, as respects the residuary bequest, if it had been wholly void. But, that view being rejected, the act is not without effect. In the Girard Will Case, 2 How. 127, the supreme court of the United States declared that, if the trusts there were in themselves valid, but the municipal corporation incompetent to execute them, the state alone could object to its want of capacity. And in Girard v. Philadelphia, 7 Wall. 1, 15, with reference to the trusts under the same will the court said:

"Nor can a valid vested estate in trust lapse or become forfeited by any misconduct in the trustee, or inability in the corporation to execute it, if such existed. Charity never fails; and it is the right, as well as the duty, of the sovereign, by its courts and public officers, as also by its legislation (if needed), to have the charities properly administered."

The supreme court of Pennsylvania has spoken to the like effect in respect to legislative control over the administration of trusts by a municipality. City of Philadelphia v. Fox, 64 Pa. St. 169.

Finally, I am not able to see that there is anything in the will of John Handley in unlawful restraint of alienation, or any trust for forbidden accumulations. With these questions, however, the heirs and next of kin have no concern. Let a decree be drawn dismissing the bill of complaint, with costs.