## NEW ORLEANS v. FISHER.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 46.   Argued October 12, 1900.—Decided January 28, 1901.

The city of New Orleans having collected school taxes and penalties thereon, and not having paid over these collections, judgment creditors of the school board of the city, whose claims were payable out of these taxes, were entitled, if the school board failed to require it, to file a creditor's bill against the city for an accounting.

The city was bound to account not only for school taxes but also for the interest thereon collected by way of penalty for delay in payment.

As the collections were held in trust, the statute of limitations constituted no defence.

Jurisdiction of the actions in which the judgments were recovered against the school board could not be attacked on the creditor's bill.

No demand for an accounting as of a particular date being alleged or proved, interest on the amount found due prior to the filing of the creditor's bill is allowed only from the latter date.

THIS was a bill filed by Mrs. M. M. Fisher, joined and authorized by her husband, John Fisher, citizens of the Kingdom of. Spain, May 11, 1896, against the city of New Orleans, in the Circuit Court of the United States for the Eastern District of. Louisiana, which alleged—

"That she recovered a judgment in this hon. court against the board of school directors, a corporation created by the laws of the State of Louisiana, and a citizen thereof, in the sum of more than ten thousand dollars, as more fully appears by the record of said suit;

"That your oratrix obtained two other judgments against

the same school board, before the civil district court for the parish of Orleans, amounting in the aggregate to many thousand dollars;

"That all of said judgments are now final; that they are made payable out of the school taxes levied by the city of New Orleans, prior to 1879.

"Your oratrix avers that the school taxes out of which said judgments have been made payable, is a trust fund levied by the city of New Orleans, for the purpose of paying the expenses of the public schools of the city of New Orleans.

"1st. That the city of New Orleans has failed to collect the said taxes punctually and that it was through her fault and negligence that the same remain uncollected, and by reason of her neglect she has become liable for the amount of taxes yet remaining uncollected.

"2d. Your oratrix further complains and says that said taxes, under the law, carried interest at the rate of ten per cent per annum and that the city of New Orleans has never paid to the school board any of the interest due on said taxes, but she has misapplied and diverted the same to other unlawful uses.

"3d. Your oratrix further avers that the school board created the obligation against said school taxes, by virtue of contracts which were legally entered into and your oratrix was protected by the Constitution of the United States from any impairment of her contract.

"That in violation of this constitutional right, the State of Louisiana passed act 82 of 1884, which directed that the property of delinquent taxpayers should be sold for what it would bring and that all taxes due thereon should by virtue of said sale be cancelled.

"That by reason of said law, the city of New Orleans allowed the property on which the school taxes were due to be sold for state taxes, and she caused the city taxes, including the school taxes, to be cancelled; that she was thus guilty, 1st, as a delinquent trustee for not having enforced the collection of the said tax; and 2d, for having failed to protect the interest of your oratrix at said state tax sale; that the cancellations thus made amount to many thousands of dollars.

"4th. That the said city of New Orleans at various times passed ordinances cancelling and annulling the said taxes and remitting the interest thereon :

"That your oratrix is unable to give the exact amount of each kind of violations of her obligations by the trustee, and it is absolutely necessary to make the city of New Orleans account for the various amounts which have been lost to your oratrix through the unfaithfulness of said trustee.

"That the board of school directors to whom the city of New Orleans should account have refused to demand such an account and will continue so to do and your oratrix would be left without a remedy.

"That the fund which the city of New Orleans administers seems now to be sufficient to satisfy the demands of all the creditors who are entitled to be paid out of the same.

"Your oratrix further avers that her judgments are made directly payable out of the school taxes levied prior to 1879 and she has an equitable lien thereagainst enforceable before a court of equity.

"She further avers that under the law her certificates which are merged in her judgments have been under the law, received by the city of New Orleans, directly in payment of the school taxes without the intervention of the board of school directors.

"That for those reasons your oratrix brings her bill against the city of New Orleans and the board of directors of the city schools of New Orleans for an account.

"Your oratrix brings this bill for herself and all parties similarly situated who are willing to appear and contribute to the costs thereof, they being too numerous to be made parties hereto."

The prayer was that the city school board and the city answer, and "give a full, fair and perfect account of all the school taxes collected by the city of New Orleans for the years 1873, 1874, 1875, 1876, 1877 and 1878; of all the interest received thereon by said city and never accounted for ; of all the taxes which were not collected for want of proper enforcement, and which have since been cancelled both by sales made by the state tax collectors and by ordinance adopted by the city council ; " and for general relief.

Subsequently a supplemental bill was filed in respect of property alleged to have been acquired by the city through seizures for taxes.

The bill was taken as confessed as against the school board, and general demurrers were filed by the city, and overruled.

The city thereupon, March 12, 1897, answered, admitting "that oratrix recovered judgments against the board of school directors, a corporation of the State of Louisiana, and a citizen thereof, both in this honorable court and in the civil district court for the parish of Orleans as is set forth in oratrix's bill of complaint and records annexed thereto and referred to therein;" "that all of said judgments are now final and are payable as decreed and provided for in the said judgments;" but denying "that the school taxes out of which said judgments have been made payable is a trust fund levied by the city of New Orleans for the purpose of paying the expenses of the public schools of said city;" and "that it has ever failed to collect said taxes punctually, and denies that any of the same remain uncollected, and denies that if any of the same remain uncollected, they so remain by reason of any negligence on the part of this defendant, and denies that defendant is liable at all for the amount of any such taxes yet remaining uncollected, if any such there be."

Also admitting "that the city of New Orleans had never paid to the school board any interest which she may have collected on any back taxes, and defendant denies that any such interest, if same has ever been collected, was due to the school board, and defendant denies that she has ever misapplied or diverted to unlawful uses any interest that she may have collected from delinquent taxpayers or back taxes, and defendant avers and shows that by express provision of law all interest which she may collect on any back taxes is especially set aside for certain purposes and cannot by her be used for school purposes or for any other purpose than that commanded by law;" and denying "that the school board created the obligations against the school taxes, set forth in oratrix's bill of complaint, by virtue of any contracts legally entered into, and denies that the oratrix has any right to invoke the protection of the Constitution of the United

States herein, and denies that the provisions of the same regarding impairment of contract have been in any manner violated by this defendant;" " that act No. 82 of 1884 was passed in violation of any constitutional rights of oratrix in the premises, and defendant declares that whatever was done by the State of Louisiana in passing the said act, if it was done, was within the legislative authority, and the said taxes and legislative provisions were subject to change, amendment and repeal by the same authority which created them, and defendant shows and avers that the city of New Orleans had no authority or control over the action of the legislature in the premises;" " that the city of New Orleans allowed any property on which school taxes were due, to be sold for said taxes, and denies that she caused the city taxes, including the school taxes, to be cancelled;" " that she has been or is guilty as a delinquent trustee for not having enforced the collection of said taxes, denies that she ever was a trustee in the matter, denies that she ever failed to enforce the collection of any taxes which it was her duty to enforce, denies that it ever was her duty to protect the interests, if any she had, of oratrix, at said tax sales, denies that oratrix had any such interest and denies that there were any such tax sales;" " that any cancellations amounting to many thousands of dollars, or to any amount, were made by reason of said sales as set forth in oratrix's bill of complaint;" " that the city of New Orleans passed ordinances cancelling and annulling any taxes, or remitting any interest thereon, but if any taxes were so cancelled or remitted, defendant avers the same was done by authority of law or by judgment of a competent court. Defendant denies that there was or is any obligation on the part of the city to account either to the school board or to the oratrix for any taxes, moneys or appropriations such as are set forth in oratrix's bill of complaint."

The answer further denied " that it was the duty of the school board to call this defendant to account, and denies that the school board or the oratrix herein has any cause of action against this defendant for such an account. Defendant denies that there was any privity between the school board and this defendant, or between Mrs. Fisher and this defendant. And

further answering defendant says, that if any such cause of action for an accounting ever did exist in favor of said school board or of said oratrix, the same was effective and executory in the year 1880, and became actionable and exigent in the year 1880, and in the years following the year 1873 up to 1879 inclusive; that said action of accounting was personal to said school board and could only be exercised and availed of by the said school board, which action is prescribed by the lapse of ten years from and after each of the said years, and that oratrix has no right or cause of action in the premises;" and "that there is any fund now administered, or which ever was administered by the city of New Orleans, derived either from appropriations, taxes or money said to be due said school board, and denies that if there is or was any such fund, that the said school board or oratrix has any rights in the premises."

It was admitted "that the judgments of oratrix are payable as stipulated in said judgments," but denied "that oratrix has any equitable lien enforceable against the city of New Orleans before a court of equity by reason thereof;" and also "that under the law were the services which she alleges have been merged in her judgments ever received by the city of New Orleans directly in payment of the school taxes without the intervention of the board of school directors."

The city further denied the purchase of property "for the taxes due for the years during which oratrix's claim is alleged to have arisen;" any resulting trust if purchases had been made; any statutory lien; and "that the oratrix has any right or reason to invoke the equitable jurisdiction of this honorable court."

Replication was filed, and the cause referred to a master "to take a full, true, fair and perfect account of all the funds, principal and interest, received by the city of New Orleans from the school taxes levied in 1871, 1873, 1874, 1875, 1876, 1877 and 1878, and of all interest remitted illegally, and of all properties purchased for said taxes as more fully prayed in the bill and supplemental bill filed herein, and to that effect the parties shall produce before said master all books, papers, documents to be examined and which may be necessary or proper in the premises."

Numerous persons claiming to have judgments against the School Board, similar to the judgments of Mrs. Fisher, intervened and asked to share in the proceeds of any amount found to be due by the city of New Orleans on the accounting. May 22, 1897, the master reported:

"1st. The city of New Orleans owes the school board for the principal of school taxes collected and not paid over from the years 1871 to 1878, both inclusive, the amount of $23,180.03.

"2d. The proportion of the interest actually collected by the city of New Orleans on the taxes of the years 1871 to 1878, both inclusive, up to January 1st, 1897, to which the school board will be entitled, if it is entitled to the same proportion of the interest as of the principal of said taxes, is $48,758.75.

"It is a question of law whether the school board is entitled to any part of the interest. I think it is—the interest as a mere accessory of the principal belongs in my opinion to the same person to whom the principal belongs. Accordingly in my opinion the amount the city of New Orleans now owes to the school board for taxes collected, and for interest on the taxes collected, is as above stated, $71,938.78."

That complainant had abandoned the attempt to show that the city owed anything on account of properties purchased for taxes. That the city was not chargeable "with the calculated amount of interest not collected." And "that the following parties have proved their claims against the fund herein, by judgments rendered in their favor against the school board, in the civil district court for the parish of Orleans, namely:

| | |
|---|---:|
| "M. M. Fisher | $11,094 87 |
| " | 8,802 39 |
| " | 5,864 64 |
| T. J. Gasquet | 57,059 69 |
| Jose Venta | 21,297 72" |

Complainants with several intervenors filed exceptions to the master's report, and on June 7, 1897, the city of New Orleans filed exceptions as follows:

"Defendant excepts to that part of the report of the master wherein he expresses his opinion that the interest on taxes is a

mere accessory of the principal, and belongs to the person to whom the principal belongs, and that, therefore, in his opinion, the city of New Orleans owes the school board for taxes collected and interest collected. Exceptor excepts to this on the ground that:

"1st. It was no part of the master's duty, under his reference, to decide this question or to express any opinion upon the question of law involved therein, but in the event that the court overrules this exception and holds that such was his duty, then and in that case the city of New Orleans excepts to his conclusions of law, and asserts that, on the contrary, his conclusion is erroneous; that the interest does not follow the taxes, and does not belong to the party to whom the taxes belong.

"Defendant excepts to the statement of the master that the amount reported as collected out of the school taxes from 1871 to 1878, inclusive, is due by the city to the school board or to the board of liquidation at any time since its collection."

June 29, 1897, the city filed an exception to the jurisdiction of the court *ratione materiæ et personæ*, averring "that plaintiff's petition contains no averment that the suit could have been maintained by the assignors of the claim sued upon by Mrs. M. M. Fisher in the suit which forms the basis of this action;" and on July 1, a plea in abatement "that plaintiff, Mrs. M. M. Fisher, and defendant are both citizens of the State of Louisiana, and that by reason thereof this court is without jurisdiction *ratione personæ.*" This exception and plea were afterwards stricken from the files as irregular and not filed in accordance with the rules. The city then offered in open court to file a motion and a plea further attacking the jurisdiction of the court, but leave was refused; and thereafter the case came on for final hearing on the bill, answer, replication, exhibits, proofs and testimony, and master's report.

Included in the evidence offered on behalf of complainant were the pleadings and judgment in the cause of Mrs. Fisher against the School Board, in which judgment was rendered in the Circuit Court, May 19, 1892. The petition in that case alleged that Mrs. Fisher and her husband were "both citizens of the Kingdom of Spain residing in the island of Cuba;" counted

upon a judgment against the School Board rendered by the civil district court of the parish of Orleans; and stated that the claim which formed the basis of the judgment was for salary due petitioner as a school teacher of the public schools of the city, and for the salary of other teachers, whose claims had been trans- ferred to petitioner. The defendant filed an exception to the effect that the court was without jurisdiction as the rights, credits and school warrants proceeded on were held by petitioner under assignments, and that the assignors were all citizens of the State of Louisiana and without right to sue defendant in the Circuit Court. This exception was tried before a jury and a verdict rendered in favor of petitioner, whereupon the exception was overruled, and judgment was thereupon rendered in favor of petitioner for $8097.17, the amount of the judgment rendered in the state court. It appeared that on this judgment garnishee process had been served on the city treasurer and *ex officio* treasurer of the School Board and the sums of $1893.09 and of $312.56, less costs, realized in 1894, and in 1895.

On February 21, 1898, the court gave judgment in favor of plaintiffs and intervenors, and, among other things, decreed: " That the city of New Orleans, trustee of the special school taxes levied and collected for the years 1871 to 1878, inclusive, be condemned to pay plaintiffs and intervenors the said taxes, received and collected by her, as follows: $71,938.78 with five per cent interest per annum on $71,139.60 from January 24, 1881, and on $799.18 from May 11, 1896, until paid. And it is further ordered that this bill be retained for a further accounting and such orders and decrees as may be necessary."

Mrs. Fisher died February 25, 1898, and on April 22, 1898, John Fisher was made party complainant as natural tutor of his minor children. April 23, 1898, the city filed a petition for rehearing which was denied, but the court directed the final decree to be amended so as to only allow interest on the amount recovered, to wit: $71,139.60 from February 21, 1898, the date of said decree, instead of from January 24, 1881, as theretofore allowed. On the same day, April 23, and prior to the decision on the rehearing, a plea in abatement was put in by the city to the effect that John Fisher, being a citizen of Spain, was unable

to prosecute the suit, and that it should be abated because a state of war existed between Spain and the United States, and the subjects and citizens thereof. On the proofs the court was satisfied that complainant was a citizen of Great Britain, whereupon the plea was overruled. From the decree of the Circuit Court both parties appealed to the Circuit Court of Appeals for the Fifth Circuit, which modified the decree so as to allow five per cent interest on the sum of $71,139.60 from January 24, 1881, and on the sum of $799.18 from May 8, 1897, and as so modified the decree was affirmed with costs. 91 Fed. Rep. 574.

The city applied to this court for the writ of certiorari, which was granted.

*Mr. J. J. McLoughlin* and *Mr. Branch K. Miller* for the city of New Orleans.

*Mr. Charles Louque* for Fisher and others.

MR. CHIEF JUSTICE FULLER, after making the above statement, delivered the opinion of the court.

Fourteen errors were assigned in the Circuit Court of Appeals, which were considered and disposed of *seriatim.* Many of these alleged errors raised questions not within the exceptions to the master's report, and, in any view, we think the case may be determined without minutely retraversing the ground.

Mrs. Fisher and her husband recovered judgment against the board of school directors in the state District Court, May 22, 1890, which, on appeal, was affirmed by the Supreme Court. *Fisher and Husband* v. *School Directors*, 44 La. Ann. 184.

February 23, 1892, Mrs. Fisher and husband brought an action against the school board on the judgment so recovered, in the Circuit Court of the United States for the Eastern District of Louisiana. The petition set forth that Mr. and Mrs. Fisher were citizens of the Kingdom of Spain, and that the judgment sued on was recovered on certain claims for school teachers' salaries, including Mrs. Fisher herself. An exception was filed to the jurisdiction of the court on the ground that the assignors

of the school warrants held by Mrs. Fisher as assignee could not have sued in that court. The matter was submitted to a jury, and a verdict returned in plaintiffs' favor, whereupon the exception was overruled, and afterwards the case went to judgment payable out of the school taxes levied prior to 1879. This judgment was rendered May 19, 1892, and on May 11, 1896, the present bill, in the nature of a creditor's bill, was filed on behalf of Mrs. Fisher, joined and authorized by her husband, (setting up that judgment and others,) and of all others similarly situated, to compel an accounting for their benefit by the city in respect of the school taxes levied prior to 1879, and the interest thereon, collected and not paid over to the school board, as a trust fund for the payment of the expenses of the public schools, it being averred that the school board had refused to require such accounting.

After demurrer filed and overruled, the city answered, admitting the recovery of the judgments as alleged; that they had become final; and that they were payable as provided therein; and denying that the school taxes collected constituted a trust fund; any liability for interest collected; any privity between Mrs. Fisher and the city; and pleading prescription by the lapse of ten years.

The cause was referred to a master, who reported certain amounts of school taxes, and of interest on school taxes, collected by the city. The city filed exceptions to the conclusions of the master that the city was indebted to the school board for interest collected; and that the amount reported as collected out of the school taxes from 1871 to 1878, inclusive, was due by the city to the school board "at any time since its collection."

The facts are not in controversy, and the questions raised, or attempted to be raised, are questions of law.

The bill invoked the ordinary exercise of equity jurisdiction in this class of cases. The school taxes collected were held in trust by the city, and, as the school board declined to require an accounting, these creditors, whose claims were payable out of the taxes, were entitled to the interposition of a court of equity to reach the fund. The suggestion of want of privity between complainants and the city, as defeating the jurisdiction,

is without merit. Nor is the defence of the statute of limitations well founded.

The judgments were rendered since 1890, and were made payable out of these taxes; the school certificates were merged in these judgments; and this bill was filed within ten years.

As between the city and the school board, the city did not hold these collections in her own right. The possession of the one was the possession of the other; the possession of the city was precarious, and not *animo domini;* and being trustee she could not acquire the trust fund by lapse of time. There was no adverse possession in repudiation of the fiduciary relation. *Oliver* v. *Piatt*, 3 How. 333, 411; *New Orleans* v. *Warner*, 175 U. S. 120, 130.

After the master's report and the exceptions thereto had been filed, the city undertook to raise the question of the jurisdiction of the Circuit Court on the ground of the want of competency in the assignors of Mrs. Fisher to sue in that court, and of want of diversity of citizenship between Mrs. Fisher and the city. The first of these objections had been made and after trial overruled in the proceedings which resulted in the judgment of May 19, 1892. The petition in that case also alleged that Mrs. Fisher and her husband were citizens of Spain. The judgment was conclusive on both points, and not open to impeachment as to either collaterally or on a creditor's bill. *Mattingly* v. *Nye*, 8 Wall. 370, 373; *Evers* v. *Watson*, 156 U. S. 527, 533; *Laing* v. *Rigney*, 160 U. S. 531, 539.

On July 1, 1897, a plea to the jurisdiction of the court in this case because Mrs. Fisher was a citizen of Louisiana was put upon the files without leave of court, and was stricken off as irregular on December 20. This action of the court is not open to review, and as this bill was merely ancillary the plea was immaterial. *Root* v. *Woolworth*, 150 U. S. 401, 413.

The city on the same day, December 20, applied for leave to file a plea alleging that Mrs. Fisher was a citizen of Louisiana at the time the original action was brought in the Circuit Court, and had so continued down to the filing of the bill; that she had fraudulently otherwise represented; and that the city had no information of the facts until after the exceptions to the mas-

ter's report were filed, which was on the seventh of June. This application was denied by the Circuit Court, and it is impossible for us to say that in this ruling the court abused its discretion.

This was not the proper way to attack the original judgment on the ground of fraud; nothing was said in the proposed plea as to the citizenship of Mr. Fisher, who was a party plaintiff, and a necessary or at least proper party, if the choses in action sued on were community property, and even if paraphernal, La. Civ. Code, §§ 2385, 2402, 2404; and the record, so far from indicating fraud, showed that Mr. Fisher was an alien, being a subject of the British crown residing at Cuba, which had led to a mistake of counsel in framing the pleadings.

It may be added that there was nothing in the case bringing it within the exceptional rule applied in *Lawrence Man. Co.* v. *Janesville Cotton Mills*, 138 U. S. 552, relied on by counsel.

The city excepted to the inclusion of the interest on school taxes collected by the city with the school taxes collected, as part of the amount for which the city was liable.

The Circuit Court of Appeals disposed of this point in these words:

" Under the law, the school taxes carried ten per cent interest per annum from the day they became delinquent. It was a penalty for non-payment of the taxes. This interest, or penalty, for delayed payment of school taxes, formed no part of the city's proper revenues. The city in collecting the same was acting as a trustee for the school board. Delay in payment of taxes operated to the prejudice, not of the city, but of the school fund and its creditors. We are unable to find any authority in law or morals for the city to appropriate to itself this interest. To allow such an appropriation would be to reward the city for its own negligence in the collection of the taxes due the school fund. We fully agree with the master that 'the interest, as a mere accessory of the principal, belongs to the same person to whom the principal belongs.'" 91 Fed. Rep. 583.

We concur in this view, and are moreover of opinion that the city, having made such collections, cannot now be permitted to escape liability therefor on the suggestion that school taxes are

not within the terms of the statute inflicting the penalty on "all taxes imposed by the city of New Orleans." Acts La. 1871, No. 48, sec. 9.

The only other matter necessary to be referred to is the allowance of interest. The Circuit Court by its amended decree gave interest on the larger sum found due from the date of the decree. The Circuit Court of Appeals modified that decree so as to award interest on the sum of $71,139.60, collected prior to January 24, 1881, from the latter date, and on the item of $799.18, reported by the master May 8, 1897, as having been collected after January 24, 1881, from the date of the report.

The bill did not charge the city with any wilful default, nor did it appear therefrom when the school board was requested to demand an accounting. The bringing of the bill amounted to such demand, and it was filed May 11, 1896, and the appearance of the city entered June 1.

The city occupied the position of agent of the school board to collect and pay over school taxes, as held in *Labatt v. New Orleans*, 38 La. Ann. 283, yet it may fairly be said that, under the legislation upon the subject, it was not the duty of the city to pay the money over immediately, but only as occasion might arise, and that, as no charge of fraudulent conversion was made, interest would not commence to run until after failure to pay when required to do so, or failure to account on demand.

Where interest is sought by way of damages for delay, courts of equity exercise a certain discretion as to its allowance.

In view of the acquiescence of the school board in the retention by the city of the interest collected on school taxes, an acquiescence in good faith so far as appears; the attitude of the city as a public corporation; and the lack of averment or evidence of demand prior to the filing of the bill, or of effort to compel an accounting, we think that interest should not be allowed in this case prior to May 11, 1896.

*The decree of the Circuit Court of Appeals is modified so as to provide for five per cent interest on the sum of $71,139.60 from May 11, 1896, and on the sum of $799.18 from May 8, 1897, and as so modified is affirmed with costs; and the cause is remanded to the Circuit Court with a direction*

*to amend its decree in the particulars above specified, it being affirmed as so modified.*

MR. JUSTICE PECKHAM and MR. JUSTICE MCKENNA took no part in the consideration and disposition of the case.