## WILLIAMS v. WILLIAMS et al.
### No. 4576.

Circuit Court of Appeals, Seventh Circuit.
July 29, 1932.

Rehearing Denied Nov. 2, 1932.

Walter T. Gunn and Harold F. Lindley, both of Danville, Ill., and Edmund D. Adcock, of Chicago, Ill., for appellant.

J. H. Dyer, of Hoopeston, Ill., and George F. Rearick and James A. Meeks, both of Danville, Ill., for appellees.

Before ALSCHULER and EVANS, Circuit Judges, and BARNES, District Judge.

BARNES, District Judge (after stating the facts as above).

The first question which presents itself is the one raised by the contention of the appellee Anna that the District Court lacked jurisdiction over an indispensable party, and therefore could not proceed to judgment as against her. She contends that Leland is an indispensable party.

Anna was a resident of Illinois, and was personally served with summons. Leland was a resident of Indiana, and substituted service was had upon him pursuant to section 57 of the Judicial Code (section 118, title 28, USCA).

The case at bar is a suit by one of the beneficiaries of the trust under the ninth clause of the will of Thomas to establish a trust and for an accounting against Anna, individually and as administratrix with the will annexed of the estate of Thomas, and as administratrix of the estate of Charles, and Leland. The claim of the plaintiff is that Charles, as the general agent of Thomas, during a period when Thomas was wholly incapable of transacting business, converted to his (Charles') own use certain property of Thomas, which property should and did pass under the ninth clause of the will of Thomas to Charles, as trustee for the benefit of the plaintiff and others; that Charles never ac-

counted, and that Anna, as administratrix of Charles and as an heir at law of Charles, should account. The ninth clause of the will of Thomas, which created the trust in question, directed that the real property devised thereby should be sold and converted into cash. Accordingly, all of the property which should and did pass under the ninth clause of the will of Thomas is, as a result of the application of the doctrine of equitable conversion, to be considered as personalty. 2 Perry on Trusts (7th Ed.) § 448; Burbach v. Burbach, 217 Ill. 547, 75 N. E. 519; Seymour v. Freer, 8 Wall. 202, 214, 19 L. Ed. 306; Handley v. Palmer (C. C.) 91 F. 948.

Thomas died domiciled in Vermilion county, Ill. His will was probated there. Charles was domiciled there and died there, and his estate was probated there. The situs of moveables, for the purposes of succession, is the domicile of the decedent. Wharton, Conflict of Laws (3d Ed.) § 561; Eidman v. Martinez, 184 U. S. 578, 581, 22 S. Ct. 515, 46 L. Ed. 697. The situs of the property passing under the ninth clause of the will of Thomas is, Vermilion county, Ill., in the Eastern District of Illinois. Therefore this suit was properly filed in the court below.

Furthermore, the general rule is that an executor or administrator cannot be called to account, so far as concerns assets received by him in the land of his appointment, except in the state in which he took out letters of administration. Wharton, Conflict of Laws (3d Ed.) § 616; Lawrence v. Nelson, 143 U. S. 215, 222, 12 S. Ct. 440, 36 L. Ed. 130; Burrowes v. Goodman (C. C. A.) 50 F.(2d) 92, 77 A. L. R. 249; Moore v. Mitchell, 281 U. S. 18, 24, 50 S. Ct. 175, 74 L. Ed. 673.

On the facts aforesaid, and pursuant to section 57 of the Judicial Code, Leland was properly brought into this proceeding by substituted service of process, and he will be bound by a decree herein to the extent permitted by said section 57.

Even if Leland be not bound to any extent by the decree herein, then, in a suit by Anna against Leland, the decree to be entered herein would not be res adjudicata as against Leland, but it does not follow from that that she could not have contribution. On the contrary, it should be assumed that the court, to whom a claim for contribution may be presented, will proceed justly and in accordance with law, and that she will be awarded such contribution as may be due to her.

The court's conclusion on this branch of the case is, first, that Leland was properly

brought in by means of substituted service, and that any decree entered herein will be binding upon him to the extent provided by section 57 of the Judicial Code; and, second, that the motion of Anna to dismiss the suit was properly denied.

The two principal issues of fact in this case are, first, the question as to the existence or nonexistence of a confidential relationship between Charles and his father, Thomas, and, second, as to the mental capacity or incapacity of Thomas during the last ten years of his life.

■ It will be observed that the master and the District Court are in accord on the proposition that a confidential relation existed between Charles and Thomas at all times during the period when the transactions in question in this case were had. On the question of the mental capacity or incapacity of Thomas during this period, the master and the District Court are not fully in accord. The finding of the District Court on this issue of fact is presumptively correct, but it may be successfully assailed if the court went against the clear weight of the evidence. Uihlein v. Gen. Electric Co. (C. C. A.) 47 F.(2d) 997, 1002, and cases there cited. We have, accordingly, examined all of the evidence in the record bearing upon this question. As appears above, the master on this question gave conclusive effect to the judgment in the case of Thomas against one Baxter, in which Thomas sought to restrain the negotiation of a promissory note signed by Thomas on the ground that Thomas was incompetent to transact business. The bill of complaint in the Baxter Case was signed and sworn to by Charles and alleged the incompetency of Thomas. While we are not inclined to hold that the judgment in the Baxter Case was res adjudicata in this case against Charles and his privies on the question of the incapacity of Thomas, yet we are inclined to hold, and do hold, that the bill of complaint in that case, signed and sworn to as it was by Charles, constituted a formal admission against interest by him, and now by his privies, the appellees in this case, that Thomas was at that time incompetent to transact business.

After an examination of the entire record, we conclude that the clear weight of the evidence supports the conclusion of the master on this issue of fact, and that, accordingly, the finding of the District Court on this issue is against the clear weight of such evidence.

The defenses of the appellee Anna, based upon various statutes of limitations, and her defense, based upon the doctrine of laches, may be considered together.

The master, as to all claims of the plaintiff, except the claim to the so-called Templeton land, gave effect to the doctrine of laches and the statutes of limitations set up by the appellee Anna as a defense. The District Court extended the operation of those defenses to all claims of the plaintiff.

■ The suit at bar is one to establish a trust and for an accounting by a cestui que trust against the personal representative and the heirs at law of the deceased trustee. The suit was started three years after the death of the trustee. The property in respect of which it is sought to establish a trust, and of which and the rents, issues, and profits of which an accounting is desired, is alleged to have been wrongfully appropriated by the person who afterwards became trustee, while he was acting as a general agent of his father during the mental incapacity of the father. The father, or a conservator of the father, might have called the agent to account, but the incompetency prevented the running of any statute of limitations against him, and also effectually prevented the application of the doctrine of laches to him. The father left a will wherein, by the ninth clause thereof, he established a trust in respect of property not otherwise disposed of, and wherein the son, who had been agent, was designated trustee. The record, and particularly that part of the record which discloses that the son caused the other heirs at law to ratify, approve, and confirm this will and the codicils thereto, shows that the making of this will and the codicils thereto was the result of the son's influence. By this will, the son was appointed trustee of property which the father or his conservator might have recovered. The son accepted the trust, and thereupon it became his duty, as trustee, to call upon himself, as agent, to account for the property which he is alleged fraudulently to have converted and the rents, issues, and profits thereof. This he did not do. Neither did he, during his lifetime, do anything which would start the statutes of limitations to running, or which would mark the beginning of a delay which might in course of time constitute laches. He did not file an account as trustee, or present to the plaintiff any paper which showed, or purported to show, that with which he charged himself as trustee.

"The law is well settled that, as between trustee and cestui que trust, in the case of an express trust, the statute of limitations has no application, and no length of time is a bar.

Against an express and continuing trust time does not run until repudiation or adverse possession by the trustee and knowledge thereof on the part of the cestui." 2 Perry on Trusts, § 863. See, also, City of New Orleans v. Warner, 175 U. S. 120, 130, 20 S. Ct. 44, 44 L. Ed. 96; City of New Orleans v. Fisher, 180 U. S. 185, 196, 21 S. Ct. 347, 45 L. Ed. 485.

There was no repudiation by Charles, there was no adverse possession by Charles, and accordingly there could not be knowledge of such repudiation or adverse possession by the plaintiff.

■ There is another aspect of this case which must not be forgotten. Thomas was 66 years of age when the plaintiff was 14. Charles was 20 years older than the plaintiff. The blood relationship between Charles and the plaintiff was that of brothers, but, under the facts in this case, the relationship was closer than that. It was more nearly that of parent and child. The plaintiff was a son of his father's later years. The plaintiff's real father was physically a cripple, and became mentally crippled and incompetent to transact business when plaintiff was only 14 years old. At that time the brother Charles assumed the headship of the family, and was by all members of the family regarded as the real head thereof. So, when we are considering whether plaintiff delayed so long in the bringing of the suit as to bar the same, we are actually considering whether a child has delayed so long against his parent or his parent's estate as will bar the child's cause of action. This suit was started 3 years after the death of Charles. Furthermore, there is undisputed proof in the record that the plaintiff did not know of the frauds therein complained of until within one year of the time of bringing suit.

"No time will protect a fraud so long as it is concealed; therefore, until a fraud is discovered, or could have been discovered by ordinary diligence, the statute does not begin to run; for no cause of action exists within the knowledge of the party entitled to the action." 2 Perry on Trusts, § 861. See, also, So. Pac. Co. v. Bogert, 250 U. S. 483, 39 S. Ct. 533, 63 L. Ed. 1099.

If it be said that the application of the foregoing rules places appellees at a disadvantage, it may be answered that such disadvantage, if any, will come about, not from the application of those rules, but from the failure of appellees' decedent and intestate to perform the duties which devolved upon him, first, as agent, and then as trustee. Certain of these duties were the duty to refrain from making a profit in dealing with or for his principal, the duty of keeping accurate accounts, and the duty of rendering an accounting. If any disastrous consequences result, they will result from the breach of these and like duties, and not from the application of rules of law designed for the protection of the incompetent, the youthful, and those in ignorance of their rights.

■ It having been found to be a fact that from 1895 to the date of his death Thomas was mentally incompetent, and that a relation of trust and confidence existed between Thomas and Charles, it inevitably follows that there was a duty upon Charles, and is now upon his personal representative and heirs at law, to the extent of property received by them, to account for the acts and doings of Charles, as the agent of Thomas, and for the moneys, goods, and chattels of Thomas which came into Charles' hands as such agent, and also to account for and show the fairness of any and all of the transactions with Thomas and in the property of Thomas.

The master found that the plaintiff was entitled to a decree for a three-eighths share of the net selling price of the Templeton land over and above a $7,000 mortgage thereon, and for a three-eighths share of the net income of said land since 1896 over and above the interest and expense of this $7,000 mortgage. What would have been the master's findings in respect of the other items involved in this suit; namely, the Armstrong land, the Bennett land, the Buehler land, the mortgage of Thomas on the Templeton land, the Victor land mortgage, the Bowen mortgage, the Hoopes legacies, and the Hoopes estate commissions, had the master not found the statutes of limitations and the doctrine of laches were defenses as to these items, we do not know, except that we infer that the master was inclined to consider that the services rendered by Charles in and about the Hoopes estate would entitle him to a sum equal to the amount of the commissions. And we gather from the memorandum of opinion of the District Court that, had that court not given effect to the statute of limitations and the doctrine of laches as defenses, that court would have been inclined to sustain the master's report as to the Templeton land, but what would have been the disposition of the District Court in respect of the other items above referred to, had it not given effect to the statute of limitations and the doctrine of laches as defenses, we cannot determine. Aft-

er an examination of the record, we are of opinion that the master's recommendation in respect of the Templeton land was equitable and should have been decreed, and should now be decreed. But, after an inspection of the record in respect of the other items involved in this suit, above referred to, we are unable to determine what should have been decreed or what should now be decreed, other than that .the defendants' account in respect thereof, and that upon such accounting both sides have leave to introduce such further evidence as they may be advised is proper or necessary.

For the reasons above set forth, the decree of the District Court is reversed and the cause remanded to the District Court, with instructions to take further proceedings not inconsistent with the views hereinabove expressed.