## James Wells, Appellee, v. Village of Wilmette, Appellant.

### Gen. No. 20,833.

1. MUNICIPAL CORPORATIONS, § 407*—*when liable as trustee for improper distribution of special assessment fund.* Where a municipality which had collected the full legal amount of the principal and interest of certain instalments of a special assessment applied the fund to the payment of outstanding bonds, and interest thereon, issued against the instalments, in the order of their presentation,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

with the result there were no funds to meet plaintiff's two bonds which were presented last, owing to the fact that the interest on the bond issue exceeded the interest on the assessment, the failure of the municipality to prorate the interest among the bondholders amounts to a misappropriation of plaintiff's proportionate share of the fund, which renders the municipality liable to him therefor.

2. MUNICIPAL CORPORATIONS, § 407*—*when treasurer required to prorate interest payments out of special assessment fund.* It is the duty of the treasurer of a municipality to keep an account of the receipt of the principal and interest of the several instalments of a special assessment fund and of the amount of bonds outstanding against the instalments, and to prorate the payment of interest where necessary, even though he does not know who owns the outstanding bonds.

3. MUNICIPAL CORPORATIONS, § 148*—*when liable for wrongful distribution of special assessment fund by treasurer.* Wrongful distribution of a special assessment fund by a village treasurer to the detriment of the holder of bonds issued against the fund renders the village liable, although the matter of the distribution was not brought to the attention of the village trustees until some time after it was made.

4. MUNICIPAL CORPORATIONS, § 407*—*when not relieved from prorating interest in distributing special assessment fund.* The facts that the statute authorizing bond issues against special assessments gives municipalities the privilege of redeeming the bonds at the time of any annual payment of interest and permits any property owner to pay his assessment with such bonds which are to be accepted for their par value. and accrued interest, do not relieve the municipality from prorating the interest payments on the bonds where the interest on the assessment is insufficient to pay the interest on the bonds.

5. MUNICIPAL CORPORATIONS, § 403*—*when payment of judgment recovered for wrongful distribution of special assessment fund not payment of special assessment bond.* Where a judgment is recovered against a village by the holder of a bond issued against a special assessment for a violation by the village of its duty as trustee in distributing the special assessment fund, the payment of such judgment does not constitute the payment of a special assessment bond out of the general funds.

Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Affirmed. Opinion filed June 4, 1915.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

**Statement by the Court.** This is an appeal from a judgment for $1,050.74, rendered by the Circuit Court of Cook county in an action of assumpsit brought by James Wells, plaintiff, against the Village of Wilmette, defendant, upon two special assessment improvement bonds for $500 each, dated August 31, 1897, and maturing on December 31, 1903, and December 31, 1904, respectively. The cause was tried before the court without a jury upon a stipulation as to the facts. Plaintiff's amended declaration consisted of a special count and the common counts, to which the defendant filed a plea of the general issue, and it was stipulated that all defenses might be raised under that plea without filing special pleas.

From the stipulation of facts it appears that on July 23, 1896, an ordinance was passed for the paving and otherwise improving of a portion of Central avenue in said village, the cost thereof to be paid for by a special assessment to be levied in accordance with the provisions of the statutes then in force; that a petition was filed in the County Court and the assessment was confirmed on November 28, 1896, for $22,176.11; that the assessment was divided into seven instalments, the first being for $4,629.88 (which was afterwards reduced to $2,613.32, by rebate to the property owners pursuant to resolution of the board of trustees of said village), and the second and succeeding instalments being each for $2,813.68; that the contract for the doing of the work was let to Charles M. Porter on April 3, 1897, at the price of $17,738.90; that the contract provided, *inter alia,* that the village should pay the contractor in bonds upon monthly estimates at certain rates for the work actually performed, that the contractor should be paid from the special assessments made for the improvement when collected, and from no other fund and in no other manner save at the option of the village, that the bonds should bear interest at the rate of six per cent. per annum and

should be issued in accordance with the provisions of the Act of June 17, 1893 (J. & A. ¶ 1479), and might be redeemed at the option of the village in the manner provided for in said act, that the contractor should make no claim against the village in any event except from the collection of the special assessments, made or to be made for said improvement, and should take all risk of the invalidity thereof, and that the village should not be liable in any event by reason of the invalidity of the special assessments, or for failure to collect the same; that thereafter the contractor completed the work, which was accepted by the village, and a final estimate was issued to him on October 2, 1897; that bonds in the sum of $16,800, dated August 31, 1897, to anticipate the second and succeeding instalments of said special assessment, were issued and delivered to the contractor, that the accrued interest on said bonds at the time of their delivery amounted to $76.70, and that a warrant for $862.20, payable out of the first instalment, was also delivered to him, making a total payment to him of $17,738.90, the contract price; that the costs and expenses of making, levying and collecting the assessment were paid out of the first instalment; that the total amount collected on all seven instalments was $22,176.11, of which $19,495.40 was principal and $2,680.71 was interest, and that the total amount paid out of said seven instalments was $22,176.11; that the total amount collected on the second and succeeding instalments was $20,073.64; that the total amount paid out of said second and succeeding instalments was $20,073.64, of which $15,804.48 was principal and $4,269.16 was interest on said bonds; that the sixth and seventh instalments of the assessment, as confirmed, were each for $2,813.68, which instalments bore interest at six per cent. per annum from and after December 29, 1896; that eight bonds, known as "Series E" bonds and aggregating

$2,800, were issued against the sixth instalment of the assessment, of which bonds five were for $500 each, and three were for $100 each; that plaintiff purchased bond No. 4 of said series in the open market for value and before maturity; that by the terms of said bond the village promised to pay to bearer on December 31, 1903, the sum of $500 with interest thereon from date, August 31, 1897, at the rate of six per cent. per annum, payable annually on presentation of the coupons attached, and it was recited on its face that the bond was issued to anticipate the collection of a part of the sixth instalment of said assessment, which instalment bore interest from December 29, 1896, and that the bond and the interest thereon were payable *solely* out of said sixth instalment of the assessment *when collected,* and further that the bond was redeemable at the option of the village at the time of any annual payment of interest, after twenty days' notice by publication in any newspaper published in Cook county; that eight bonds, known as ''Series F'' bonds and aggregating $2,800, were issued against the seventh instalment of the assessment, of which bonds five were for $500 each, and three were for $100 each; that plaintiff purchased bond No. 2 of said series in the open market for value and before maturity; and that said last-mentioned bond was for $500, dated August 31, 1897, and maturing December 31, 1904, and was payable solely out of said seventh instalment when collected, and was in other respects similar to said bond No. 4, above mentioned.

It further appears that the village received on account of said sixth instalment the sum of $3,118.79, which was made up of $2,813.68, the amount of said instalment as confirmed, and $305.11 interest collected thereon, and to this amount of $3,118.79 was added $129.33, transferred from the fifth instalment, making a total of $3,248.12, which sum was all that the village ever collected or received on account of said sixth

instalment, and which sum included all interest legally collectible; that this sum of $3,248.12 was all paid out by the village, of which $2,357.34 was paid on the principal of the bonds, Series E, issued against this instalment, and $890.78 as interest on the bonds; that the interest on all the bonds of said Series E was paid by the village and that the principal of all said bonds was paid in full, except bond No. 4; that the village redeemed two of the bonds of said series before maturity, and not at a date when any annual payment of interest was due, viz.:   Bond No. 3, for $500, on April 12, 1900, and bond No. 1, for $500, on February 11, 1902; that at the maturity of the bonds of said series, December 31, 1903, the village paid the principal of bonds Nos. 2 and 5, for $500, each, and also the principal of bonds Nos. 6, 7 and 8 for $100 each, and also the accrued interest on said bonds and the accrued interest on bond No. 4; that on January 3, 1904, plaintiff presented said bond No. 4 for payment; that at this time there was in the village treasurer's hands only the sum of $57.34 to the credit of said sixth instalment; that plaintiff was paid said sum and such payment was indorsed upon the bond as a credit upon the principal thereof, but the village refused to pay plaintiff the balance of the face of the bond.

It further appears that the village received on account of said seventh instalment of the assessment the sum of $3,029.92, which was made up of $2,813.68, the amount of said instalment as confirmed, and $216.24, interest collected thereon, which sum of $3,029.92 was all that the village ever collected or received on account of said seventh instalment, and which sum included all interest legally collectible; that said sum of $3,029.92 was all paid out by the village, of which $2,247.14 was paid on the principal of the bonds, Series F, issued against this instalment, and $782.78 as interest on the bonds; that the interest on all the bonds of said Series F was paid by the village and

that the principal of said bonds was paid in full, except bond No. 2 for $500 and bond No. 8 for $100; that the village also redeemed two of the bonds of this series before maturity, viz.: Bond No. 5, for $500, on February 16, 1900, and bond No. 1, for $500, on February 11, 1902; that at the maturity of the bonds of said series, December 31, 1904, the village paid the principal of bonds Nos. 3 and 4, for $500 each, and also the principal of bonds Nos. 6 and 7, for $100 each, and also the accrued interest on said bonds and the accrued interest on bonds Nos. 2 and 8; that the village also paid the sum of $47.14 on the principal of said bond No. 8 (not now in question); that on January 3, 1905, plaintiff presented said bond No. 2 for payment; that at this time there was in the village treasurer's hands no money to the credit of said seventh instalment or any instalment, and the village refused to pay plaintiff the face of said bond or any part thereof.

It further appears that all bonds issued to anticipate the collection of the sixth and seventh instalments of said assessment, which were paid, were paid by the village treasurer in the regular course of business; that at no time was the matter of the payment of any of said bonds brought to the attention of the president or board of trustees of said village until after January 3, 1905, at which time there was no money in the village treasury available for the payment of the bonds sued upon; that said village on and since January 3, 1905, has received no money for or on account of said assessment or any instalment thereof; and that no part of said assessment or any instalment thereof or any interest thereon remains uncollected.

It further appears that on July 6, 1897, the village adopted a resolution assuring certain objectors, who had appealed to the Supreme Court, that if they would

dismiss their appeal and allow the improvement to be commenced at an early date the village would rebate proportionately to the property owners the excess of the assessment over and above the actual cost of the improvement and the proper costs and expenses of the assessment, and would also cause to be rebated, as far as possible, the accrued interest on the assessment, such rebate to be made before the collection of the assessment, provided that in making such rebate ample provision should be made to take care of the interest on the bonds and to cover contingencies; that on October 2, 1897, the village adopted a resolution directing the finance committee and the village attorney to ascertain and adjust the amount of the rebate to be returned to the property owners, in order that a certificate might be issued by the village to its collector, authorizing him to credit such rebate on the first instalment; and that on October 17, 1897, the village adopted a resolution authorizing and directing the village collector to make a reduction of forty-five per cent. on the first instalment on each description of property affected by said assessment (such deduction not to apply to the public benefits assessed against the village), and further authorizing and directing said collector to collect interest on all instalments from and including June 1, 1897, which date was fixed as the day upon which the instalments should begin to bear interest, and stating that interest which had accrued prior to June 1, 1897, on said assessment should be rebated, and that said collector should act in accordance with the resolution. Counsel for plaintiff (appellee) state in their brief and argument here filed:

"The 45 per cent. abatement of the first instalment was wholly illegal, but the appellee cannot take advantage of it because as a bondholder he is interested *in this action* only in the amounts actually collected and disbursed on the sixth and seventh instalments.

The abatement of interest on *all* instalments which had accrued prior to June 1, 1897, nullified the recital in the bond that interest ran from December 29, 1896, and was also illegal, but the appellee cannot take advantage of it because the interest so abated did not reach the village treasurer's hands."

The defendant, Village of Wilmette, on the trial submitted to the court twelve propositions of law. Nos. 1 to 4 inclusive were held as law. But the court refused to hold as law propositions Nos. 5 to 12 inclusive, to which rulings the defendant excepted. The court in effect held, by the refusal of the 5th proposition, that there had been a wrongful diversion by the village of a part of the funds applicable to the payment of the bonds and interest issued against the 6th and 7th instalments respectively; by the refusal of the 6th proposition that all the moneys collected by the village had not been lawfully disbursed; by the refusal of the 7th and 8th propositions that it was not the duty of the village treasurer to pay at maturity the bonds, issued to anticipate the collection of the 6th and 7th instalments respectively, *in the order in which they were presented,* so far as the funds in his hands to the credit of said respective instalments would reach; by the refusal of the 9th and 10th propositions that all moneys collected by the village on said 6th and 7th instalments, respectively, had not been lawfully disbursed prior to the times plaintiff presented bonds No. 4, Series E, and No. 2, Series F, and demanded payment thereof; and by the refusal of the 11th and 12th propositions that the village is *generally* liable upon said two bonds because of the failure of the village treasurer to apply the 6th instalment moneys pro rata upon all unpaid 6th instalment bonds, and to apply the 7th instalment moneys pro rata upon all unpaid 7th instalment bonds. The court ascertained what was the proportionate share of the funds on hand to the credit of the 6th instalment belonging to plaintiff, as the holder of bond No. 4, Series E, on

December 31, 1903, and found that the unlawful withholding of that share began January 3, 1904, when payment thereof was refused, and allowed interest, at the rate of five per cent. per annum, on said proportionate share from said date to the date of judgment. Said share and interest thereon were figured at the sum of $542.69. The court also ascertained what was the proportionate share of the funds on hand to the credit of the 7th instalment belonging to plaintiff, as the holder of bond No. 2, Series F, on December 31, 1904, and found that the unlawful withholding of said share began January 3, 1905, when payment thereof was refused, and interest at said rate on said share from said date to the date of judgment. Said share and interest thereon were figured at the sum of $508.05. And the court found in favor of the plaintiff for $1,050.74, which is the total of said two sums, and, after overruling a motion for a new trial, entered judgment on the finding against the village, to the entry of which the village excepted. No complaint is made as to the correctness of the court's figures, but it is urged that the court erred in entering in this action a judgment in any amount against the village.

CHARLES H. JACKSON, for appellant.

HENRY F. HAWKINS, for appellee; GEORGE A. MASON, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

Counsel for the respective parties agree that the action of assumpsit for money had and received is an equitable action and lies to recover moneys to which a plaintiff is equitably entitled; that a special assessment when collected is a trust fund; that a municipality is a mere instrumentality for the collection of such assessment and its proper distribution among the

parties equitably entitled thereto; and that a munic-
ipality incurs no general liability except where it
unlawfully withholds moneys actually collected and
equitably due the contractor, bondholder or property
owner. Counsel for the village does not deny that the
second and succeeding instalments of the special as-
sessment in question, when collected, became trust
funds for the retirement of the bonds issued against
said instalments respectively, but counsel contends
that the village, as trustee, can only be liable for the
moneys collected on the sixth and seventh instalments
where it appears it has diverted such moneys to pur-
poses *other* than the payment of the bonds, and inter-
est thereon, issued against said instalments respect-
ively, and that as it appears from the stipulated facts
that the amounts of both instalments as confirmed, to-
gether with all interest thereon legally collectible, have
been collected, and have been disbursed only for the
payment of bonds, and interest thereon, issued against
said instalments respectively, the village is not liable
to plaintiff in this action in any amount on the unpaid
bonds held by him. In other words, counsel contends
that the village, as trustee, in the present case did its
full duty when it paid bonds, and interest thereon, out
of the proper instalment fund *in the order of presenta-
tion* to the extent of the fund, and that the remedy of
plaintiff, a bondholder who did not present his bonds
for payment until after other bondholders had been
paid and the respective funds became exhausted, is
by way of a supplemental assessment.

Counsel for plaintiff argue that the position taken
by counsel for the village is too narrow; that it as-
sumes that if the entire trust fund of a particular in-
stalment of an assessment is used in the payment of
bonds and interest there can be no misappropriation
of the funds; that it ignores the well-established rules
which govern in the disbursement of trust funds; and
that, in effect, it prefers certain claimants to the fund,

who happen to present their claims first, instead of treating all claimants having equal rights alike. Counsel further argue that *any* misappropriation of the fund of a particular instalment of an assessment will render a municipality generally liable; that this may take the form of paying bonds or vouchers issued against another assessment, or of paying for items of work and labor not properly chargeable to the assessment, etc.; or that it may take the form, as here, of over-paying *interest* to certain interest coupon holders, thereby depleting the fund available for the payment of the *principal* of the bonds issued against a particular instalment. And counsel contend that under the provisions contained in article IX of the Cities and Villages Act (J. & A. ¶¶ 1388 *et seq*.) and sections 1, 2, 3 and 4 of the Act of June 17, 1893, it was evidently contemplated by the legislature that each instalment of an assessment should constitute a trust fund for the retirement of the *principal* of the bonds issued against such instalment, and that the *interest* collected on each instalment should constitute a trust fund for the payment of the *interest* on the bonds issued against such instalment; in other words, that the instalment is pledged to the retirement of the *principal* of the bonds issued against the instalment and that the *interest* collected on the instalment is pledged to pay *interest* on those bonds.

It appears from the stipulated facts in the present record that the village received the full amount of the sixth and seventh instalments as confirmed, viz.: $2,813.68 for each instalment; that, as the bonds issued against each instalment amounted to $2,800, the village received enough from each instalment to pay the principal of all of the bonds issued against the particular instalment; that the village received $305.11 as interest on the sixth instalment, which was all that was legally collectible from the property owners on said instalment; that the village paid out $890.78 as

interest on all the bonds issued against said instalment; that the village received $216.24 as interest on the seventh instalment, which was all that was legally collectible from the property owners on said instalment; and that the village paid out $782.78 as interest on all the bonds issued against said instalment. It thus appears that the village did not collect enough money in *interest* on each instalment to pay all the *interest* (that was actually paid out) on the bonds issued against each instalment, and that the deficiency in each case was caused thereby. And counsel for plaintiff contend that because of these facts it was the duty of the village to see to it that the *principal* of plaintiff's bonds be paid in full out of the proper fund, as well as the principal of the other bonds payable out of the fund, and that it was the duty of the village to prorate the *interest* actually collected from the property owners among the coupon holders entitled thereto, and that because the village did not do this, but paid the bonds and interest on the principle "first come first served," it is liable in this action to plaintiff, as the holder of the two bonds sued on, for the plaintiff's proper proportionate share of the respective funds.

After careful consideration we have reached the conclusion that, under the facts disclosed, the trial court did not err in its finding and that the judgment appealed from should be affirmed.

In *Village of Wilmette v. People,* 214 Ill. 107, 112, (which was an action arising before the Act of June 17, 1893, was passed) it is said: "The *interest* which the holder of the vouchers was entitled to receive was that, and that only, which the statute required the property holder to pay in order to discharge the lien against his property." And the rule seems to be firmly established that it is the duty of a trustee, in case the fund in his possession is insufficient to satisfy all the claimants having equal rights, to *prorate* the

fund among them.  In *Colby v. Copp,* 35 N. H. 434,
436, it is said: "But if he (the trustee) holds the dif-
ferent claims among which he is by law entitled to
make the appropriation, not in his own right but as
agent or trustee for others, he owes to them the duty
to make a just and reasonable application of the
money according to their respective equitable claims.
Equality is equity ordinarily between parties, who
stand in similar relations.  The general rule, there-
fore, clearly should be, that when an agent or trustee
receives money generally, and he holds claims of dif-
ferent persons, to each of whom he is under the same
obligations, he should apply the money ratably to the
discharge of all the claims, and this obligation would
be in no way affected by the circumstance that if the
debts were all his own, he would have the undoubted
right to apply the money to either of them at his elec-
tion."  In *Hewitt v. Hayes,* 205 Mass. 356, 365, the
court says: "If the total amount that can be held
by all the claimants who are entitled to a charge upon
the fund thus determined exceeds the amount of the
fund, then that amount is to be divided among them
in proportion to the amounts of their respective
charges."  In 27 Cyc., page 1765, it is stated: "Sev-
eral debts or claims, all equally secured by the same
mortgage, are as a general rule entitled to share ra-
tably in the proceeds of its foreclosure, whether they
are all held by the mortgagee, or belong to as many
different owners,  *  *  *.  And the rule is applied as
between the holders of a series of bonds all secured
by the mortgage, and is also applied for the benefit of
holders of interest coupons detached from the bonds."
In Dillon on Municipal Corporations, vol. 2 (5th Ed.)
p. 1390, sec. 893, that author says: "Under special
improvement bonds the municipality was held to be a
statutory trustee for collection, bound to the exercise
of due diligence to collect according to law, enforcing
the same through municipal machinery as an agent

of the owners of the bond and answerable for failure to perform this duty, or not paying over, or failing to pay the money collected. * * * None of the bondholders has any right of priority in the fund derived from the assessments. This is a trust fund pledged to the payment of *all* of the bonds, and the right of the holder of a part of the bonds is only to such portion of the fund realized as the sum of his bonds bears to the entire amount of the issue of bonds.'' We are of the opinion that the acts of the village complained of amounted to a wrongful diversion or misappropriation by the village of plaintiff's proportionate share of funds collected from the sixth and seventh instalments of said assessment, and that the village is liable in this action for such proportionate share. In *Donohue v. Village of La Grange,* 183 Ill. App. 222, 226 (affirmed 263 Ill. 607), this court said: ''If, however, the village wrongfully diverted any of the special fund, or used it to pay claims not legally chargeable against the fund, then the village is liable in assumpsit to the extent of such wrongful use or payments, to the person to whom the moneys so used were rightfully due. *Conway v. City of Chicago,* 237 Ill. 128.''

Counsel for the village further urges that it was impracticable and difficult in this case to prorate the interest among the interest coupon holders. We do not think so. The village treasurer is required to keep special assessment moneys in separate funds and to keep a separate account of each fund. *Dolese v. McDougall,* 78 Ill. App. 629, 644. If his books are properly kept he knows at the end of any year how much assessment he has received on an instalment, and how much interest thereon, and how much interest on other instalments. When interest coupons are presented he can easily ascertain whether he can pay them in full or whether he must prorate the interest fund. And we do not think that it is material that

Wells v. Village of Wilmette, 193 Ill. App. 30.

the village treasurer did not know who owned the out-standing bonds, or that the matter of the payment of any of the bonds was not brought to the attention of the board of trustees until after January 3, 1905. The village treasurer knew what bonds were unpaid and how much was on hand to the credit of each fund, and the village through its treasurer made the payments at its peril.

Counsel for the village says that if municipalities are required to apportion the fund on hand, in cases where deficiencies exist, instead of being required to levy a supplemental assessment, difficult questions will arise in the administering of these funds. And counsel asks what would be the duty of the village treasurer in case certain lands were sold at tax sale for delinquent special assessments and certificates of sale issued to the village? This question does not arise on this record. And whether a supplemental as-sessment would lie is not now material. The question is, was there an improper distribution or diversion of certain funds of the original assessment as col-lected? Under the facts disclosed we think the vil-lage misapplied the trust funds of the two instalments in question by paying out more interest than was col-lected from the property owners, which it had no right to do to the prejudice of plaintiff, and to that extent it failed in its duty as trustee and should account to plaintiff in this action for his proportionate share of said funds.

While it is true that special assessment bonds are not negotiable and the bondholder has no greater rights than the contractor to whom they were issued (*Northern Trust Co. v. Village of Wilmette*, 220 Ill. 417; *National Bank of La Crosse v. Petterson*, 200 Ill. 215), we do not think that this should abrogate the equitable doctrine as to the duty of a trustee to pro-rate trust funds and the corresponding right of vari-ous beneficiaries standing in similar relations to be

treated alike. If the contractor, or one purchasing from him, holds all the bonds, there is no necessity for the application of said doctrine of prorating, but it would be applicable if there was more than one contractor, and no good reason is perceived why it should not be applicable to several persons who have purchased bonds which were originally issued to one contractor.

By section 2 of the Act of July 1, 1893, the corporate authorities, issuing bonds such as were issued in this case, are given the privilege of redeeming the bonds at the time of any annual payment of interest upon twenty days' notice by publication, and by section 4 of said act it is provided that any property owner may pay his assessment wholly or in part with the bonds issued under the act on account of such assessment, and that in making such payment such bonds shall be taken at their par value and interest accrued to the date of making the same. Counsel argues that from these provisions it would appear that it was not the theory of the law that there should be any prorating of the bonds or interest under any circumstances. We do not think that this follows. And it does not appear from this record that any of the bonds redeemed before maturity were redeemed on any annual interest payment dates or after a proper notice. Neither does it appear that any property owner purchased any of the bonds and paid, or attempted to pay, his assessment wholly or in part therewith. While the statute (section 56, ch. 24, Hurd's R. S. 1895, J. & A. ¶ 1482) gave to the property owner the option to pay any instalment or instalments which may have been assessed against his land, at any time before maturity and thereby stopping the further running of interest, and while it would appear that it was the intention that bonds issued against any instalment should be paid in full as soon as there was money available for that purpose, it nevertheless appears

from the facts in this record that when plaintiff presented his 6th instalment $500 bond for payment a day or two *after* its maturity there was only the sum of $57.34 left in the fund for the payment of the principal of the bond, and when he presented his 7th instalment $500 bond for payment there was nothing left in that fund. And it does not appear that this was occasioned through any fault of plaintiff. It is true that plaintiff was paid more *interest* on his bonds than his pro rata share, but counsel for plaintiff state that such excess interest so paid was taken into consideration by the court in reaching the finding made in this case, and no complaint is made by counsel for the village as to *amount* of the finding.

Counsel for the village further argues that this judgment must be paid out of the general funds of the village and that the present board of trustees cannot lawfully use moneys raised by general taxation to pay any part of the special assessment bonds sued upon. We think it is a sufficient answer to say that such general funds would not be used to pay special assessment bonds as such but to pay a judgment based on a violation of the duty of the village as trustee. *City of Chicago v. McNichols*, 98 Ill. App. 447.

The judgment of the Circuit Court is affirmed.

*Affirmed.*