## Melville N. Rothschild, Appellee, v. Village of Calumet Park, Appellant.

### Gen. No. 34,715.

Opinion filed May 19, 1931. Rehearing denied May 29, 1931.

W. Otto Wielgorecki, for appellant; Walter F. Briody, of counsel.

John W. Creekmur, for appellee; Robert N. Erskine and D. E. Hoopingarner, of counsel.

Mr. Justice Kerner delivered the opinion of the court.

Melville N. Rothschild, complainant, filed a bill against the Village of Calumet Park, defendant, for an accounting with respect to certain special assessments and for an injunction. After issue joined the cause was referred to a master to take testimony and report his conclusions of law and fact. The master filed his report, in which he recommended that a decree be entered requiring the defendant to pay complainant the amount due upon the bonds owned by complainant; that defendant be required to complete its

records with reference to the collection of instalments of special assessments so as to show the status of the moneys collected and the delinquent assessments and that defendant be required to institute appropriate proceedings to enforce the payment of delinquent assessments. Objections to the report were ordered to stand as exceptions. There was a hearing on the exceptions, which were overruled, and the court on July 28, 1930, entered a decree in which he adjudged and decreed that complainant have and recover of and from the defendant the sum of $30,904.45 together with interest at the rate of five per cent per annum from the date of the decree, and judgment was accordingly entered against the defendant; that defendant shall forthwith pay to complainant any and all moneys that it may have and is holding to the credit of any of the several instalments of said special assessments according to the collections made by the defendant and covered by the accounting made, in proportion to which the amount of complainant's bonds and coupons may bear to the total amount of bonds and coupons respectively remaining outstanding as against the said several instalments; and that any sums so paid shall be credited only upon the aggregate judgment hereby entered; that judgment be entered upon each and all of the several bonds and coupons of the complainant for the amount and to the extent only found by this decree to be due and owing upon said bonds and coupons, and that said bonds and coupons shall remain outstanding as the valid and subsisting obligation of the defendant to the extent of the balance of the face value thereof over and above the amount for which judgment is so entered, but payable with interest at five per cent per annum from its date of maturity thereof only out of the funds collected and received by the defendant on account of and as the proceeds of the respective instalments of said special assessments sub-

sequent to the collections accounted for in these proceedings; . . . that the defendant shall pay to complainant all moneys which may be collected and received subsequent to the accounting herein, by said defendant on account of collections of and from said several instalments of said special assessments out of which complainant's bonds and coupons are payable, in the proportion which the amount of complainant's bonds and coupons bear to all of the bonds and coupons remaining outstanding and payable from the said several instalments of such special assessments; that the defendant shall complete its records pertaining to the collection of all the instalments of all of the said several special assessments, so that the collection records shall show all collections that have been made by or in behalf of the defendant whether by the village collector or by the county collector and county treasurer either by voluntary payment or by tax sale and as to each separate lot, piece or parcel of land against which assessments have been levied, and to show the amount collected on each instalment and the amount collected for interest with each instalment and the date of payment, and so that its records may show the present status of the moneys collected and amounts remaining delinquent for each separate lot, piece or parcel of land assessed; that the defendant shall institute and prosecute appropriate proceedings to enforce the payment of delinquent and unpaid assessments and all instalments thereof by foreclosure proceedings against each and all of the lots, pieces and parcels of land assessed for said several improvements; that the defendant shall appropriate in the year 1931 by ordinance in accordance with the laws of Illinois, an amount sufficient to pay the balance then remaining due and unpaid on account of the judgment entered hereby against the defendant together with an amount estimated to be sufficient to pay interest upon such

balance from the date of this decree up to July 1, 1932; and said defendant shall report to this court as of the first day of the first fiscal year of the defendant for the year 1931, the balance of said judgment then remaining unpaid with the amount so estimated to be sufficient to pay interest thereon and for which such appropriation is to be made; and the defendant shall pass any and all necessary ordinances and take such further proceedings as may be required under the laws of Illinois to levy sufficient taxes to meet the appropriation so made in the year 1931, and to collect such taxes thereafter in due course of law; and the defendant shall collect such taxes levied in accordance with the terms of this decree, and pay and deliver all of such taxes to the complainant on account of this judgment and decree, and such payment shall be made from month to month as such taxes may be collected and received by defendant; and this court does hereby expressly retain jurisdiction of this cause for the purpose of enforcing this decree, compelling the appropriation of funds and the levying and collection of taxes in accordance herewith and the payment of the judgment hereby entered, requiring the payment of the balance remaining upon the bonds and coupons of the complainant out of funds collected and applicable thereto, compelling the completion of the records of said defendant in accordance with the decree and compelling the institution and prosecution of foreclosure proceedings, all at the times and in the manner herein or hereinafter provided. This appeal is prosecuted upon that decree.

The defendant is a municipal corporation and prior to November 19, 1926, was known as the Village of Burr Oak, located in Cook county, Illinois; it caused to be levied certain special assessments for public improvements, and issued bonds to anticipate the collection of instalments of said special assessments which

bear interest at the rate of 5 per cent per annum evidenced by coupons attached to the bonds, the earliest maturity of the bonds being December 31, 1922, and the latest being December 31, 1930. The complainant is the owner of said bonds aggregating original face value of $40,500 issued by defendant to anticipate the collection of certain instalments of special assessment Numbers 2, 6, 11, 12, 13 and 14. The bonds so owned by plaintiff are payable solely out of the respective instalments of said special assessments when collected; all proceedings and the issuance of said bonds were had and done pursuant to the Local Improvement Act, Cahill's St. ch. 24, ¶ 120 *et seq.;* pursuant to said Local Improvement Act, the first instalment of special assessment Numbers 2 and 6 fell due, became payable and were in fact put in collection by defendant in 1920; the first instalments of special assessments Numbers 11, 12, 13 and 14 became payable and were put in collection in the year 1921, and the remaining instalments of said special assessments fell due annually thereafter until all have matured; as the instalments matured, the village collecter received payments of portions of said instalments, with interest, from the owners of the property, and also received certain moneys from time to time from the county collector in payment of certain of said instalments which have been paid to the county collector, and the said village collector has certified certain pieces of said lands as delinquent to the county collector. Beginning with the year 1920, the defendant has collected annually a large amount of money on each of the instalments of said special assessments, in anticipation of which collections the said improvement bonds were issued, and has made payments of certain of said bonds not owned by complainant, but has failed to make payment on the bonds owned by complainant, and has failed and refuses to pay complainant his dis-

tributive share of the moneys collected on the instalments of the assessments Numbers 2, 6, 11, 12, 13 and 14. It further appears that defendant has not kept proper records of such payments as have been made on said several instalments of either principal or interest; that certain of the records kept by defendant show that certain moneys have been collected, but do not show what disposition has been made of such funds; that no separate records have been kept by the defendant showing the collections of interest on said special assessments, or the several instalments thereof; that said records show that on certain of said assessments, instalments have been collected, but the proportionate part of the collections have not been paid out on the bonds held by complainant, to which such collections should have been applied; that all of the bonds owned by complainant were presented for payment to defendant in the spring of 1924, 1925, 1926, 1927 and 1928, and a demand made for payment of all of said bonds and coupons or the proportionate amount then due thereon; that the total par value of said bonds issued against all of said special assessments amounted to $108,900; that the amount of money collected and the amount chargeable to defendant for which it is liable for public benefits on the instalments of said special assessments was the sum of $63,684.57; that the proportionate amount of principal with interest to February 15, 1930, which should have been paid to complainant, amounted to $27,963.03 while only $568 was paid to him on account of the bonds held and owned by complainant.

It further appears that the books kept by the defendant consist only of the records of the village collector as to each special assessment, which show only the payment, if paid, of each instalment and the interest, or if unpaid, that it has been certified delinquent to the county collector. The village collector's records

are not completed to show subsequent collections by the county collector. In order to ascertain the total of all collections of all instalments it was necessary to examine not only the records of the village collector, but the delinquent list and the judgment sale, redemption and forfeiture records for Cook county for each of the several years in which the several instalments of said assessments have been collectible. To determine whether all instalments of an assessment against any one lot have been paid, where payment has not been made to the village collector, it was necessary to examine the records of the county collector for all of the several years in which the several instalments had been certified delinquent by the village collector. This condition permitted errors and omissions to occur in the delinquent list from year to year without detection and permitted payment to the village collector of delinquent instalments while prior instalments remained delinquent. The defendant has withdrawn certain instalments from the annual tax sale, but it did not appear that any action had been taken by the defendant to enforce payment of delinquent assessments. A large proportion of each instalment of the several assessments remained uncollected and it did not appear that the defendant purchased any delinquent lands at the several annual tax sales or that defendant had taken any action to enforce payment of delinquent instalments of the assessments.

Defendant's counsel urged only three points as grounds for a reversal of the decree: (1) that there are no grounds for equitable relief; (2) that there is not sufficient evidence upon which to base the amount found due complainant, and (3) that the statute governing the payment of local improvements bonds does not contemplate prorating among the bondholders. As to the first contention, the rule is well settled that a party cannot resort to equity for relief when he has

a complete and adequate remedy at law. This rule is not disputed by the complainant, but it is contended that the bill alleges, and the facts prove, that the complainant is entitled to equitable relief for the reason that the instant case involves a trust fund of which the defendant is trustee. It has been held in *Howell v. Moores,* 127 Ill. 67, 78, that the enforcement of trusts is peculiarly within the province of a court of equity, and says (p. 79):

"A case, which has for its object the enforcement of a trust, is a case in equity. . . .

"The jurisdiction of a court of equity for enforcing trusts is not taken away by the fact that the party has a remedy at law, especially where the party seeking relief is entitled to a discovery, or where the trustee is bound to state an account of the trust fund and its proceeds." See also *People v. Bordeaux,* 242 Ill. 327, and *Dorenkamp v. Dorenkamp,* 109 Ill. App. 536.

"Where a trust relation exists between parties, the *cestui que trust* is entitled to a complete accounting from the trustee, in which all data in the trustee's accounts, which it is his duty to keep, should be furnished, . . . An accounting is a statement of receipts and payments by a trustee concerning the estate intrusted to his care, the detailed statement of its administration while in his hands, what has been received and from what sources, and the balance, if any, remaining." (26 R. C. L. section 252, p. 1387.)

And it has been held that the proceeds of special assessments constitute trust funds issued in payment for the improvement. (*Conway v. City of Chicago,* 237 Ill. 128; *Wells v. Village of Wilmette,* 193 Ill. App. 30, 39; *People v. Flynn,* 265 Ill. 414, 427; *Schoden v. Schaefer,* 184 Ill. App. 456, and *Harrold v. City of East St. Louis,* 197 Ill. App. 121.) It is, however, suggested by defendant's counsel that the relief

sought is purely legal and that complainant has an adequate remedy at law. From the facts, as before stated, it clearly appears that the accounts involved are numerous and complicated, and under such a state of facts, equity will entertain jurisdiction. It does not follow, because a case is one in which a remedy at law is afforded, equity will not also take jurisdiction of the same state of facts to afford the same redress. Where the remedy in equity is more adequate because of some special circumstances, the jurisdiction of equity will be sustained. (*Warfield-Pratt-Howell Co. v. Williamson*, 233 Ill. 487; *Mayr v. Chesman & Co.*, 195 Ill. App. 587; *Cordell v. Solomon*, 234 Ill. App. 430, and *People v. Small*, 319 Ill. 437, 445.)

It is next contended that there is not sufficient evidence upon which to base the amount found due complainant, because the computations of principal and interest are erroneous. In the case of *Wells v. Village of Wilmette, supra*, it was held that it was the duty of the treasurer of a municipality to keep an account of the receipts of the principal and interest of the several instalments of a special assessment fund and of the amount of bonds outstanding against the instalments, and to prorate the payment of interest where necessary even though he does not know who owns the outstanding bonds. The record in the instant case discloses that the complainant offered in evidence the records of the village collector, showing the collection of assessments, together with the delinquent lists and the judgment, sale, redemption and forfeiture records of the county collector. The records of the village collector pertaining to these assessments cover a total of 893 pages. The records of the county collector comprise 68 exhibits and each exhibit consists of a number of pages. When this evidence was presented to the master it became his duty to ascertain the ultimate fact, namely, the totals actually received by

the defendant as to each instalment of each assessment for both principal and interest, and the services of a public accountant were had who made an examination of the records kept by the defendant and the county collector, and said accountant testified that he has computed the interest collected each year with each of the instalments of the assessments, and from the computation so made the court arrived at the amount found due by the decree. No testimony was offered by the defendant. We are of the opinion from this state of the record that the chancellor had sufficient evidence before him upon which to base the decree.

Finally it is contended that the statute governing the payment of local improvement bonds does not contemplate the prorating among the bondholders of the collections made by the defendant, and that the act makes it the duty of the defendant to use the collections on hand from time to time to retire in full as many bonds as it is able to pay, and he cites section 43 of the Local Improvement Act, Cahill's St. ch. 24, ¶ 169. We cannot agree with this contention. In *Wells v. Village of Wilmette, supra* (p. 42), the court said:

"And the rule seems to be firmly established that it is the duty of a trustee, in case the fund in his possession is insufficient to satisfy all the claimants having equal rights, to *prorate* the fund among them. In *Colby v. Copp,* 35 N. H. 434, 436, it is said: 'But if he (the trustee) holds the different claims among which he is by law entitled to make the appropriation, not in his own right but as agent or trustee for others, he owes to them the duty to make a just and reasonable application of the money according to their respective equitable claims. Equality is equity ordinarily between parties, who stand in similar relations. The general rule, therefore, clearly should be, that when

an agent or trustee receives money generally, and he holds claims of different persons, to each of whom he is under the same obligations, he should apply the money ratably to the discharge of all the claims, and this obligation would be in no way affected by the circumstance that if the debts were all his own, he would have the undoubted right to apply the money to either of them at his election.' In *Hewitt v. Hayes,* 205 Mass. 356, 365, the court says: 'If the total amount that can be held by all the claimants who are entitled to a charge upon the fund thus determined exceeds the amount of the fund, then that amount is to be divided among them in proportion to the amounts of their respective charges.' In 27 Cyc., page 1765, it is stated: 'Several debts or, claims, all equally secured by the same mortgage, are as a general rule entitled to share ratably in the proceeds of its foreclosure, whether they are all held by the mortgagee,. or belong to as many different owners, . . . And the rule is applied as between the holders of a series of bonds all secured by the mortgage, and is also applied for the benefit of holders of interest coupons detached from the bonds.' In Dillon on Municipal Corporations, vol. 2 (5th Ed.) p. 1390, sec. 893, that author says: 'Under special improvement bonds the municipality was held to be a statutory trustee for collection, bound to the exercise of due diligence to collect according to law, enforcing the same through municipal machinery as an agent of the owners of the bond and answerable for failure to perform this duty, or not paying over, or failing to pay the money collected. . . . None of the bondholders has any right of priority in the fund derived from the assessments. This is a trust fund pledged to the payment of *all* of the bonds, and the right of the holder of a part of the bonds is only to such portion of the fund realized

as the sum of his bonds bears to the entire amount of the issue of bonds.' "

We have considered and answered all of the points raised and argued by the defendant and conclude that the errors assigned do not warrant a reversal of the decree. It is therefore affirmed.

*Affirmed.*

SCANLAN, P. J., and GRIDLEY, J., concur.