**NORFOLK & W. RY. CO. v. BOARD OF EDUCATION OF CITY OF CHICAGO et al.**

No. 14687.

District Court, N. D. Illinois, E. D. April 17, 1936.

Gardner, Foote, Morrow & Merrick, of Chicago, Ill. (William A. Morrow, of Chicago, Ill., of counsel), for plaintiff.

Richard S. Folsom, Atty., Board of Education, and Ralph W. Condee, Asst. Atty., Board of Education, both of Chicago, Ill., for defendants.

WOODWARD, District Judge.

By this suit plaintiff seeks to enjoin the defendants, the board of education of the city of Chicago, the city of Chicago, and certain officers of the board of education and of the city from paying out any money now in the hands of the city treasurer of the city of Chicago arising from the proceeds of taxes extended for educational and building purposes upon the tax levy for 1929, except on a pro rata basis, to the owners and holders of tax anticipation warrants who have not been paid either principal or accrued interest on warrants issued against the educational and building tax levies, respectively, for 1929. The facts giving rise to the controversy may shortly be stated as follows:

The city of Chicago is a municipal corporation and comprises one entire school district governed by a board of education. The board of education is a body politic and corporate and has charge, supervision, control, maintenance, and government of the schools within the city. The other defendants are officers, respectively, of the city and of the board of education.

The city council of the city of Chicago, upon the request and under the direction of the board of education, levied taxes for the year 1929 for educational purposes and building purposes, respectively.

The board of education, by resolution, requested the city council of Chicago to authorize the issuance and disposition of warrants drawn against and in anticipation of the educational and building levies in a sum not to exceed 75 per cent of the total amount of the respective levies. On January 21, 1929, pursuant to the resolution of the board of education, the city council authorized the issuance and sale of the anticipation warrants as requested. The authority for the issuance of the anticipation warrants is found in section 132 of "An Act to establish and maintain a system of free schools," approved and in force June 12, 1909 (Laws 1909, p. 342), as amended by act approved and in force March 28, 1929 (Laws of Illinois, 56th General Assembly, 1929, p. 700), the material portions of which read as follows:

"The board of education shall have power to erect or purchase buildings suitable for school houses, for school administration, and for deriving revenues from school lands, and keep the same in repair; and to issue bonds for the purpose of building, furnishing and repairing school houses and school administration buildings and for purchasing sites for the same, and to provide for the payment of said bonds; and when there is not sufficient money in the treasury to meet the ordinary and necessary expenses for educational and for building purposes, to request the city council, whose duty thereupon it shall be, to order issued warrants against and in anticipation of any taxes levied for the payment of the expenditures for educational and for building purposes to the extent of seventy-five per cent of the total amount of the taxes levied for such purposes: Provided, however, that warrants drawn and issued under the provisions of this section shall show upon their face that they are payable solely from said taxes when collected, and not otherwise, at the time fixed therein and shall be received by any collector of taxes in payment of taxes against which they are issued, and such taxes against which said warrants are drawn shall be set apart and held for their payment. Every warrant issued against said taxes shall bear interest, payable annually out of the taxes against which said warrants are drawn, at a rate of not to exceed six per cent per annum, from the date of their issuance until paid, or until notice shall be given by publication in a newspaper or otherwise that the money for the payment of said warrants is available and that said warrants will be paid on presentation. Provided, however, said rate shall be not to exceed five (5) per cent after April 30, 1932."

Educational warrants in the aggregate amount of $46,800,000 and building warrants in the aggregate amount of $15,900,000 were sold.

Both the educational and building warrants were of like form and language, containing the same provisions, except that the warrants were in various amounts, had different numbers, various dates of issuance, and various dates of maturity. In all other respects, all of the warrants were identical in form and content. Each of the warrants provided that the city of Chicago "will pay to bearer," on a day certain named therein, at the office of the treasurer of the city of Chicago or at the banking house of the Guaranty Trust Company of New York, at the option of the holder, the sum of money named in the warrant with interest thereon at the rate of 6 per cent. per annum "from date hereof until paid." Each warrant further provided that the "principal hereof and interest hereon will be paid in lawful money of the United States of America from the proceeds of taxes, when received, heretofore levied upon all the taxable property in the City of Chicago for the year 1929" for educational or building purposes, according to whether it was an educational or a building warrant.

Each of the warrants further provided that it was issued "in anticipation of said taxes so levied for the year 1929," for either educational or building purposes, as the case might be, to "provide a fund to meet and defray the ordinary and necessary expenses of the public schools of the City of Chicago, and is payable, both principal and interest, solely from said taxes when collected, and not otherwise, which taxes are hereby assigned and pledged to the payment of this warrant and of all warrants issued against and in anticipation of such taxes, the total of which warrants so issued does not exceed seventy-five per cent of the tax levy made therefor, and shall be received by any collector of taxes in payment of the taxes against which it is issued."

Each of the warrants is signed by the board of education, by its president and secretary, and by the city of Chicago, by its mayor and comptroller.

The educational warrants were issued in two series. The first series was numbered from E–1 to E–55 and the second series from E–1 to E–6118. The building warrants were issued in the numerical order of their issuance. All warrants, except the educational warrants of the first series, had stated maturity dates commencing with May 15, 1930. Due to a reassessment of all the property in Cook county, the taxes were not extended until 1931, although all the warrants had matured by their terms long before the taxes were placed in process of collection. Tax collections began to come in in May, 1931. As the tax money came in, the amount collected for educational and building purposes, respectively, was segregated, assigned, and set apart by the proper city and school officers for the retirement of the educational and building warrants, respectively. When a sufficient amount of money was on hand to retire a substantial amount of the warrants, a call was issued specifying the numbered warrants which, on presentation, would be paid and retired. Of the educational warrants, the first series was first retired. As to the second series, the calls were, for the most part, but not exclusively, for the retirement of the warrants, in their numerical order. The building warrants were called for payment in their numerical order. Many of the higher numbered warrants have not been paid, and sufficient moneys cannot be collected to pay the outstanding warrants, together with accrued interest in full. In other words, the educational fund and building fund is each insolvent. The plaintiff owns educational and building warrants in the principal sum of $858,000, none of which have been paid, nor any interest thereon. Plaintiff therefore prays that an injunction issue against the municipal corporations and their officers restraining and enjoining them from paying out any further moneys in the retirement of educational and building warrants issued against the 1929 levies except upon a pro rata basis.

This question arising upon this record may be stated as follows: Should the outstanding educational and building warrants be paid in the numerical order of their issuance until the respective funds are exhausted or shall the fund on hand, and hereafter to be collected, be prorated among the holders of all the outstanding warrants?

These warrants were issued under and pursuant to the terms and provisions of section 132 of the School Law as it read in 1929. Elsewhere in this opinion the text of the material portions of this opinion is set out. Under this statute the only source

from which moneys could be derived for the payment of the warrants was the proceeds of taxes levied and extended for educational and building purposes for 1929. The statute expressly provides that they shall be paid out of taxes when collected and not otherwise. Under no circumstances do the warrants become the obligations either of the city of Chicago or of the board of education. This was expressly held by the Supreme Court of Illinois in the case of Berman v. Board of Education, 360 Ill. 535, 196 N.E. 464, 99 A.L.R. 1029, which involved the warrants now in controversy. Under the warrant statute (section 132 of the School Law as amended in 1929), it was the duty of the proper municipal authorities to levy the taxes, to extend the taxes against the real and personal property of the school district subject to taxation, to collect the taxes, and, when collected, to apply the proceeds of the collection to the payment of all warrants issued in anticipation of the taxes. The statute contains no provision for the numbering of the warrants, or that they shall be numbered in the order of their issuance, or that they be paid in numerical order, or in any manner that would result in a priority or preference of one warrant over another. Each of the warrants provided that "taxes are hereby assigned and pledged to the payment of this warrant and of all warrants issued against and in anticipation of such taxes."

All the taxes are assigned and pledged for all the warrants without distinction of any kind. All warrant holders have an equal title to the fund. The legislative intent was that all holders of warrants should participate in the distribution of the fund. The lien of all warrants against the fund was equal, and this equality attached when the warrants were issued. The warrants were to be paid out of a closed and limited fund which was "assigned and pledged" to pay all warrants issued against the fund. All the taxes levied, extended, and collected for educational and building purposes for the year 1929 constituted a trust fund for the benefit of all the warrant holders until all the warrants issued against such funds were paid and retired. Rothschild v. Village of Calumet Park, 350 Ill. 330, 183 N.E. 337; Bankers Life Co. v. Elmwood Park, 280 Ill.App. 524; People v. City of Park Ridge, 275 Ill.App. 97; New Orleans v. Fisher, 180 U.S. 185, 21 S.Ct. 347, 45 L.Ed. 485. The warrants were signed by both the city of Chicago and the board of education, and expressly constituted defendants trustees of the proceeds of the tax levies when received by the defendants.

The fund derived from the taxes were levied and collected for a particular purpose. The fund was created to discharge the obligation of the taxing units to the holders of tax anticipation warrants. When the municipality collected those funds and held them in the treasury for application to the payment of the warrants, such funds were impressed with a trust and the municipal corporation holding the funds and charged with their proper disbursement is a trustee. As heretofore noted, there is no primary obligation on the part of the city or the board of education to pay the tax anticipation warrants out of any general fund of the city or of the board of education. The municipal corporations, however, became trustees for the collection and disbursement of the taxes levied and extended to create a fund out of which the tax anticipation warrants might be paid. Authorities cited, supra.

This suit is brought to charge the defendants with their obligations as trustees and not to collect from the municipal defendants the face amount, with interest, of the tax anticipation warrants. As above noted, the warrants are to be paid out of a limited and closed fund. There is no inexhaustible power of taxation to replenish the fund. At the time the first warrants were paid, it was not reasonably to be anticipated that the collections from the extended taxes would be sufficient to pay and discharge all of the warrants issued against the educational and building tax levies. A reassessment had been ordered by the state tax commission. A large part of the taxes were to be produced from extensions against personal property. The country and the city, at that time, were in the midst of an unparalleled financial depression. A large percentage of the taxes extended against personal property, it was reasonable to conclude, never would be collected. In other words, as elsewhere stated, the fund was insolvent at the time the bill was filed and reasonably should have been anticipated to be insolvent at the time the first warrant was paid.

In such case the rule that equality is equity is applied and the fund will be distributed pro rata. Leading text-writers have expounded the rule very clearly.

Thus, in McQuillin on Municipal Corporations (2d Ed.) § 2504, it is stated:

"If there are not sufficient funds to pay the bonds all holders should share pro rata."

And from Pomeroy's Equity Jurisprudence (4th Ed.) § 407, it is stated:

"Whenever several persons are all entitled to participate in a common fund, or are all creditors of a common debtor, equity will award a distribution of the fund, or a satisfaction of the claims, in accordance with the maxim. Equality is equity; in other words, if the fund is not sufficient to discharge all claims upon it in full, or if the debtor is insolvent, equity will incline to regard all the demands as standing upon an equal footing and will decree a pro rata distribution or payment."

Dillon in his treatise on Municipal Corporations (5th Ed.) § 893, states the rule thus:

"None of the bondholders has any right of priority in the fund derived from the assessments. This is a trust fund pledged to the payment of all of the bonds, and the right of the holder of part of the bonds is only such portion of the fund realized as the sum of his bond bears to the entire amount of the issue of the bonds."

The rule is also stated and the authorities are reviewed in the case of Wells v. Village of Wilmette, 193 Ill.App. 30.

Warrants and bonds, which are payable out of a special and limited fund, must share equally and ratably in that fund, since the fund is created for the payment of all the bonds without preference. Rothschild v. Village of Calumet Park, supra; Wells v. Village of Wilmette, supra; People v. City of Park Ridge, 275 Ill.App. 97; Jewell v. Superior (C.C.A.) 135 F. 19; State v. Drainage District, 334 Mo. 753, 68 S.W.(2d) 671. An exhaustive annotation of cases dealing with this question is found in connection with State ex rel. Buckwalter v. Lakeland, 112 Fla. 200, 150 So. 508, 90 A.L.R. 704–717.

In Rothschild v. Village of Calumet Park, supra, it was directly and expressly held that the holders of bonds issued against special assessments were entitled to receive their pro rata share of all of the money collected and received by the village, and that a showing by the plaintiff that funds applicable to the bonds had been received by the village and that the plaintiff had not received his pro rata

share thereof was sufficient to make out a prima facie case entitling plaintiff to recover his pro rata share of money collected. That case does not regard the question of insolvency as being material to the plaintiff's case, but holds that, immediately upon collection of the fund or any part thereof, the bondholders are all entitled to share equally and ratably in the money collected.

A like holding was made in Wells v. Village of Wilmette, supra, where a recovery was sustained by the bondholder against the village, the fund having been exhausted by payment in full of bonds in the order of their presentation.

People ex rel. Decker v. City of Park Ridge, supra, also holds likewise.

It appears that the law in Illinois is definitely settled to the effect that each warrant holder was entitled to payment upon his warrants pro rata out of all moneys collected and received by the defendants and no warrant holders were at any time entitled to more than a pro rata payment. All of the warrants in this case were past due, according to their maturity dates, before any taxes were collected and before any warrants were paid. Under the law of Illinois, all warrant holders, therefore, stood upon an equal basis as to all of the collections made by the defendants and all were entitled to a pro rata payment out of all of the funds at any time coming into the hands of the defendants from the educational and building levies for the year 1929.

In Rothschild v. Village of Calumet Park, supra, the suit was for an accounting of money collected upon special assessments for the payment of local improvement bonds issued and payable out of said special assessments. That case is similar in all respects to the instant case.

The court there say, 350 Ill. 330, at page 341, 183 N.E. 337, 341:

"The suit is brought to enforce its liability, as trustee, to pay to the holders of the bonds the money which it received for that purpose, and it is the same, in effect, as an action of assumpsit for money had and received."

The court there further say, 350 Ill. 330, at page 342, 183 N.E. 337, 342:

"Objection is also made to the decree because it is said that it does not appear that the city has paid the money it has collected to bondholders other than the de-

fendant in error or that it has improperly paid to other bondholders more than their proportionate share. That is no answer to the claim of the defendant in error. His complaint is that the village collected the money for the payment of all the bondholders pro rata and that it did not pay him pro rata—not that it paid somebody else more than his share. It is argued that the burden of proof is on the complainant to show that the money had been improperly applied elsewhere. This is not so. When the defendant in error had shown that the village collected the money applicable to the payment of his bonds and had not paid them, he had met the burden imposed upon him and was entitled to judgment unless the plaintiff in error showed a valid defense."

To the same effect is Conway v. City of Chicago, 237 Ill. 128, 86 N.E. 619; Wells v. Village of Wilmette, supra, and People ex rel. v. Park Ridge, supra.

█ It appears from the above cases that it is not essential that the complainant show that the city of Chicago and board of education has misapplied the taxes collected. Whether defendants have paid other warrant holders more than their proper share is immaterial to plaintiff's case. The gist of the plaintiff's cause of action is that the defendants have received taxes from the 1929 levy against which plaintiff's warrants were issued and the defendants have not paid the plaintiff its pro rata share of such taxes actually received by defendants. This makes out a complete case warranting recovery in favor of the plaintiff and the burden is upon the defendants to show, if they can, a defense to such case.

The court holds that the plaintiff is entitled to recover from the city of Chicago and the board of education its pro rata share of all moneys received by the defendants applicable to the payment of 1929 educational and building warrants as for money had and received to the use of plaintiff, and hence is entitled to an accounting.

█ As against this conclusion, defendants urge that by reason of long practice and usage of the defendants in paying tax anticipation warrants in their numerical order, such custom and practice became a part of the contract when the warrants were purchased. The court, in its formal findings of fact, has found as a fact that there was no uniform, certain, notorious, and continuous practice such as defendants rely upon. However, should the court be in error as to this finding, yet the statute is so plain and unambiguous that custom cannot be resorted to in aid of its construction. Such custom and practice, if one existed, is in plain contradiction of the statute.

█ Defendants urge that the plaintiff has been guilty of laches which constitutes a bar to recovery in this case. The warrants were issued in 1929. The reassessment of the property in Cook county delayed the collection, out of which the warrants might be paid, for a period of two years. On May 4, 1931, the first warrants were paid. The 1929 taxes did not become delinquent until May 15, 1931. The first series of educational warrants in the amount of $13,500,000 were paid in May, 1931. Before the end of 1931, warrants of the second series of educational warrants were paid in the aggregate amount of $16,700,000. Before the end of 1931, building warrants aggregating $10,943,000 had been paid. Accrued interest had been paid both on the educational warrants and on the building warrants. Thereafter, as tax moneys came in, warrants were retired from time to time. In 1933 it became evident that the unpaid warrants could not reasonably be expected to be paid in full, together with interest thereon. In November, 1933, plaintiff notified the defendants that it would hold them to a strict accountability. The defendants recognizing the rights of the plaintiff and of other holders of outstanding warrants immediately sought and procured from the General Assembly of Illinois enabling legislation for the issue and sale of bonds to pay off the warrants in question. The act authorizing the sale of bonds was held unconstitutional by the Supreme Court on June 11, 1935. Berman v. Board of Education, 360 Ill. 535, 196 N.E. 464, 99 A.L.R. 1029. This suit was commenced on July 17, 1935. The delay of the plaintiff from November, 1933, is obviously explained by the efforts of defendants in seeking to pay the warrants by a bond issue. At no time have the defendants disavowed or repudiated their trust relationship. Plaintiff's demands are not barred by the ten-year statute of limitations of Illinois. The defendants have in no manner been prejudiced in making their defense and producing evidence by reason of the fact that the plaintiff remains silent.

The rule is that neither laches nor the statute of limitations is a bar to a suit against a trustee for an accounting until the trustee has openly and unequivocally disavowed and repudiated the trust relationship. New Orleans v. Warner, 175 U.S. 120, 20 S.Ct. 44, 44 L.Ed. 96; New Orleans v. Fisher, 180 U.S. 185, 21 S.Ct. 347, 45 L.Ed. 485; Barnes v. Barnes, 282 Ill. 593, 118 N.E. 1004, 4 A.L.R. 4; Brown-Crummer Co. v. City of Miami (D.C.) 40 F.(2d) 508. So long as plaintiff's demands are not barred by the statute of limitations, there can be no laches in prosecuting a suit upon such demands. Cross v. Allen, 141 U.S. 528, 12 S.Ct. 67, 35 L.Ed. 843; Kilbourn v. Sunderland, 130 U.S. 505, 9 S.Ct. 594, 32 L.Ed. 1005; Bunch v. United States (C.C.A.) 252 F. 673. Moreover, on and after November 22, 1933, when the plaintiff made a demand upon the defendants that the proceeds of the taxes "heretofore and hereafter collected" should be prorated, the defendants continued to pay warrants in full. After the notice by plaintiff, the defendants paid warrants in full at their peril. In such case no laches can be imputed to the plaintiff. Ulman v. Clark (C.C.) 75 F. 868; Chicago Medical School v. Wilson, 341 Ill. 170, 173 N.E. 168; Allmon v. Salem Bldg. & Loan Ass'n, 275 Ill. 336, 114 N.E. 170.

This suit was brought within the statutory limitation period. There is no evidence in this record that the plaintiff's delay was accompanied by any element rendering it inequitable for it to assert its title. Brunotte v. DeWitt, 360 Ill. 518, 534, 196 N.E. 489.

The injunctive relief prayed for in plaintiff's bill will be granted and a decree may be entered for an accounting.